UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X          **Docket No:**

ASAD GILANI,

*Plaintiff,*                              **<u>COMPLAINT</u>**

-

-against-                              **PLAINTIFF DEMANDS
<u>A TRIAL BY JURY</u>**


Deloitte LLP.;
Deloitte Consulting LLP.;
Deloitte USA Consulting LLP;
Deloitte Services LP;
Administrator, Deloitte LLP Group Insurance Plan.;
Retirement Appeal Committee, Defined Contribution Profit
Sharing of Deloitte LLP.;
Retirement Appeal Committee, Defined Benefits Pension
Plans of Deloitte LLP;
Traci Commons, *(In Her Individual and Official Capacities)*;
Michelle Bandes, *(In Her Individual and Official Capacities)*;
Richard Johnson, *(In His Individual and Official Capacities)*;
Mans Jabal, *(In His Individual and Official Capacities)*;
Navin Mudaliar, *(In His Individual and Official Capacities)*;
Joel Vengo, *(In His Individual and Official Capacities)*;
James Kocsi, *(In His Individual and Official Capacities)*;
Meghan Kelly, *(In Her Individual and Official Capacities)*;
Lisa  Bradley, *(In Her Individual and Official Capacities)*;
Rosemary Hodges, *(In Her Individual and Official Capacities)*;

*Defendants,*
---------------------------------------------------------------------X

Plaintiff, Asad Gilani ("Plaintiff") for his complaints against the defendants, upon

information and belief as follows:


## <u>NATURE OF THE CASE</u>

1.          Plaintiff brings this action alleging that Defendant Administrator, Deloitte LLP Group

Insurance Plan.; ("GroupPlan")**,** violated the " ) Employee Retirement Income Security

1

Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"), Under ERISA section 502(a) against Defendants Long Term Disability Group Plan of Deloitte LLP Plaintiff to a deeply rooted and wide-ranging pattern of illegal conduct including modified Medical Leave of Absence to Personal Leave without pay on May 1, 2023, by Defendant Hodges, this generate a life event to cease all benefits and, unlawful retaliation and termination on May 16, 2023 by the Deloitte.

2.      Plaintiff brings this action alleging that Defendant Retirement Appeal Committee, Defined Contribution Profit Sharing of Deloitte LLP "(ContributionPlan" **violated the)**: Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"), Under ERISA section 502(a) against Deloitte and ContributionPlan violated on November 28, 2022, by not providing Service benefits to the Plaintiff's ContributionPlan retaliation and discriminatory practices. Plaintiff to a deeply rooted and wide-ranging pattern of illegal conduct including modified Medical Leave of Absence to Personal Leave without pay on May 1, 2023, by Defendant Hodges, this generate a life event to cease all benefits and, unlawful retaliation and termination on May 16, 2023 by the Deloitte.

3.      Plaintiff brings this action alleging that Defendant Retirement Appeal Committee, Defined Benefits Pension Plans of Deloitte LLP. ("PensionPlan");" **violated the)**: Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"), Under ERISA section 502(a) against DELOITTE and the PENSIONPLAN subjected PLAINTIFF to a deeply rooted and wide-ranging pattern of illegal conduct including failure to modify illegal leave from Medical Leave to personal

Leave without pay on May 1, 2023, by Defendant Hodges ceasing  benefits and issuing COBRA,  unlawful retaliation to , and termination by the Deloitte.

4.         Plaintiff brings this action alleging that Defenseman's **violated the "),** the Age Discrimination Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, The Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 et seq. the **New York City and State Human Rights Law**, **New York State Executive Law**  § 296, *et seq. (*"NYSHRL*"); and the N*.Y.C. Admin. Code §§ 8-101 *et seq*. ("NYCHRL") and N.Y. Exec. L. §§ 290 *et seq*. ("NYSHRL").  PLAINTIFF seeks damages to redress the injuries PLAINTIFF suffered as a result of being discriminated against and retaliated, against on the basis of his Age and Terminated. PLAINTIFF also asserts that he was retaliated against and terminated by Deloitte on May 15, 2023.

5.         Plaintiff brings this action alleging Deloitte, **violated the "),** the Age Discrimination Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, The Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 et seq. the **New York City and State Human Rights Law**, **New York State Executive Law**  § 296, *et seq. (*"NYSHRL*"); and the N*.Y.C. Admin. Code §§ 8-101 *et seq*. ("NYCHRL") and N.Y. Exec. L. §§ 290 *et seq*. ("NYSHRL").  Plaintiff seeks damages to redress the injuries Plaintiff  suffered as a result of being discriminated against and retaliated, against on the basis of his Age and Terminated. Plaintiff also asserts that he was retaliated against and terminated by Defendant Deloitte on May 15, 2023.

6.         Plaintiff brings this action alleging that Defendants Deloitte   violated the "),*.*, Americans with Disability Act of 1990 ("ADA");  The Age Discrimination in Employment

Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 et seq. the **New York City and State Human Rights Law**, **New York State Executive Law** § 296, *et seq. (*"NYSHRL*"); snd the N.*Y.C. Admin. Code §§ 8-101 *et seq*. ("NYCHRL") and N.Y. Exec. L. §§ 290 *et seq.* ("NYSHRL"). Plaintiff seeks damages to redress the injuries Plaintiff suffered as a result of being discriminated against and retaliated against on the basis of his ***disability*** Plaintiff also asserts that he was retaliated against and terminated by Defendants Deloitte ., due to his disability, for requesting a reasonable accommodation, and for opposing discriminatory practices

7.. Plaintiff brings this action to remedy unlawful retaliation under applicable law, including Title VII, 42 U.S.C. §2000e-3(a); the ADEA, 29 U.S.C. §623(d); the New York Labor Law, N.Y. Lab. Law §215; NYSHRL, Executive Law §296(1)(e); and NYCHRL, New York City Admin. Code §8-107(7).

## **JURISDICTION AND VENUE**

8. Plaintiff seeks damages sustained as a result of Defendants' unlawful conduct in an amount to be proven at trial, as well as liquidated damages, punitive damages, compensatory damages, attorneys' fees, costs, expenses, and interest, as available under applicable law.

9. Plaintiff brings this action for declaratory, injunctive, and monetary relief pursuant to § 502(a)(1)(B) and § 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3). This Court has subject matter jurisdiction over Plaintiff's claims pursuant to ERISA §§ 502(e) and (f), 29 U.S.C. §§ 1132(e) and (f), and 28 U.S.C. § 1331

10.     Venue lies in the Southern District of New York pursuant to ERISA § 502(e)(2), 29

U.S.C. § 1132(e)(2), because the ERISA-governed plan at issue was administered in part

in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because some of

the events or omissions giving rise to Plaintiff's claim occurred within this District, and

Plaintiff resides in this District.

11.     This Court has subject matter jurisdiction over this lawsuit pursuant to 42 U.S.C.

§2000e-5(f)(3), in that it involves a claim under Title VII. This Court also has subject

matter jurisdiction over this lawsuit pursuant to 28 U.S.C. §1331, in that it involves a

federal question under the employment discrimination laws of the United States,

particularly 42 U.S.C. §§2000e

et seq., 29 U.S.C. §§206(d)(l), and 29 U.S.C. §§621 et seq.

12.     This Court has supplemental jurisdiction over PLAINTIFF''s state and local statutory

claims under 28 U.S.C. §1367(a), because such claims arise from the same or closely

related conduct of Defendants.

13.     This Court has personal jurisdiction over Defendants because, among other

things, (i) upon information and belief, each of the DELOITTE affiliates named as

Defendants maintains a business office in the State of New York; and (ii) the Defendants

intentionally acted in such a way as to cause injury to Crawford in the State of New York.

14.     Venue in this district is proper pursuant to the venue provisions of 42 U.S.C.

§2000e, which provides in relevant part that venue may be in any district court in the state

where the discriminatory acts took place, 42 U.S.C. §2000e-5(f)(3). Venue is also proper

5

in this district by virtue of 28 U.S.C. §1391, because this is the judicial district in which a

substantial part of the events or omissions giving rise to the claims occurred, and because

each of the Defendants is

subject to personal jurisdiction within the district.

15.      Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §§

1331 and 1343.

16.      The Court has supplemental jurisdiction over Plaintiff's  claims brought under state

and city law pursuant to 28 U.S.C. § 1367.

17.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §

1391(b), as the acts complained of occurred therein

.

## __PROCEDURAL PREREQUISITE__

18.      Plaintiff filed charges of discrimination upon which this Complaint is based with the

Equal Employment Opportunity Commission ("EEOC").

19.      Plaintiff received a Notice of Right to Sue from the EEOC, dated March 13, , 2023,

with respect to the herein charges of discrimination. A copy of the Notice is annexed

hereto

20.      Plaintiff properly made a claim under §502(a) (1) (B)  properly made a claim for

benefits

21.      Plaintiff  exhausted the plan's administrative appeal process

22..        Plaintiff is entitled to a particular benefit under the plan's terms

23.         Plaintiff was denied benefits

24.         For claims with long-term disability plans after January 1, 2018 the Department of

Labor (DOL) has released new regulations that impact the traditional definition of

"exhaustion of administrative remedies "29 C.F.R §2560.503.-1 provides PLAINTIFF

may proceed to file a lawsuit in federal court challenging the denial long-term disability

benefits when their claims are "deemed denied",

25.         Plaintiff filed Notice of Appeal - Deloitte LLP Group Insurance Plan No 505 on

April 2, 2023. Plaintiff received denial of benefits on June 1, 2023.

26.         Plaintiff filed Notice of Appeal - Deloitte LLP Pension Plan No 505 on April 2, 2023.

Plaintiff did not receive a response.

27.         Plaintiff filed Notice of Appeal - Deloitte LLP Contribution Pension Plan No 505 on

April 2, 2023. Plaintiff did not receive a response

28.         The Administrator violated the Fiduciary Rights on May 1, 2023 DEFENDANT

Rosemary Hodges termed the Long Term on 5/12/2023 and a personal leave of absence

with no pay was entered on May 1, 2023. This triggered a Life Event to cease Plaintiff's

Benefits and causes Termination.

## <u>INTRADISTRICT ASSIGNMENT</u>

29.         Pursuant to Local Civil Rule 3-2(d), this action should be assigned to the New

York/Manhattan Division, because New York/Manhattan County is where the Deloitte

LLP Long Term Disability Group Plan of Deloitte Plan and Employee Pension Plan is

administered in part, where some of the events or omissions giving rise to PLAINTIFF's

Claims occurred.

# **PARTIES**

30.   **Plaintiff Asad Gilani** (hereinafter, "**Plaintiff**") is a 66-year-old male. Plaintiff  began

working for Defendant Deloitte LLP., ELOITTE as a DC Specialist Master/Manager  on

about July 12, 2021, earning a salary of approximately $190,000 per year, plus benefits.

Plaintiff office location at 30 Rockefeller Plaza, New York, NY 10122. Plaitiff also

reside in the district, 661 Bedford Road Armonk, NY 10504.

31.   **Defendant Deloitte , LLP.** (hereinafter "**DeloitteLLP**"), is a

domestic business corporation existing under the laws of the State of Delaware.

"Deloitte" provides audit and assurance assistance, consulting, risk and financial

advisory services, risk management services, tax services, and related services

to its clients. The Deloitte  location at issue in this Complaint is located at 30

Rockefeller Plaza, New York, NY 10122.

32.   **DEFENDANT DELOITTE CONSULTING, LLP** (hereinafter "**DC**"), is a domestic

business corporation existing under the laws of the State of Delaware. "DC"

provides, consulting and related services to its clients. The DC location at issue

in this Complaint is located at 30 Rockefeller Plaza, New York, NY 10122

33.   **DEFENDANT DELOITTE USA CONSULTING, LLP** (hereinafter "**DC1**"), is a

domestic business corporation existing under the laws of the State of Delaware.

"DC1" provides, consulting and related services to its clients. The DC1 location

at issue in this Complaint is located at 30 Rockefeller Plaza, New York, NY 10122.

.

34.     **Defendant Deloitte Services, LP** (hereinafter "**SVCS**"), is a domestic business corporation existing under the laws of the State of Delaware. SVCS" provides, recruiting, hiring, on-boarding, human resource services, performance, Employee Leaves services, termination and other to DELOITTE and associated companies. The SVCS provides related services to its employees and business partners. The SVCS location at issue in this Complaint is located at 30 Rockefeller Plaza, New York, NY 10122

35.     Administrator, Deloitte LLP Group Insurance Plan**,** (hereafter "AdminGroupPlan") has been a fiduciary of the GroupPlan. It is a named administrator of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), and the Plan sponsor within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B). The Group Plan GroupPlan and Administrator and the GroupPlan governed by Deloitte LLP, 30 Rockefeller Plaza, New York, NY 10122

36.     At all relevant times, Deloitte LLP Group Insurance Plan ("GroupPlan") has been an employee Long Term Disability plan within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).

37.     At all relevant times Plaintiff, was a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the GroupPlan.

38.     At all relevant times, the GroupPlan offered, *inter alia*, Long Term Disability to DELOITTE Employees, including Plaintiff.

9

39.     At all relevant times, Defendant Administrator, Deloitte LLP Group Insurance Plan.;
        ("AdminGroupPlan") has been a fiduciary of the GroupPlan. It is a named administrator
        of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), as
        Section 7.02 of the Plan states that a Administrator has the authority to, among other
        things, "[c]onstrue any ambiguity in and interpret any provision of the GroupPlan,
        including GroupPlan provisions governing eligibility to participate and receive
        GroupPlan benefits, and supply any omission or reconcile any inconsistency therein in
        such manner as it deems appropriate in accordance with the purpose and intent of the
        Plan." Plan § 7.02(a). The Administrator denied PLAINTIFF's appeal of the denial of
        PLAINTIFF benefits under GroupPlan, retaliated and terminated PLAINTIFF's
        employment.

40.     Retirement Appeal Committee, Defined Contribution Profit Sharing of Deloitte LLP,
        (hereafter "CommitteesharingPlan") has been a fiduciary of the CommitteesharingPlan.
        It is a named retirement committee of the Plan within the meaning of ERISA § 3(16)(A),
        29 U.S.C. § 1002(16)(A), and the Plan sponsor within the meaning of ERISA §
        3(16)(B), 29 U.S.C. § 1002(16)(B). The CommitteesharingPlan governed by Deloitte
        LLP, 30 Rockefeller Plaza, New York, NY 10122.

41.     At all relevant times, Retirement Appeal Committee, Defined Benefits Pension Plans of
        Deloitte LLP. ("PensionPlan"); has been an employee Pension contribution plan within
        the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). ");

42.     At all relevant times PLAINTIFF, was a participant, as defined by ERISA § 3(7), 29
        U.S.C. § 1002(7), in the PensionContributionPlan.

43.     At all relevant times, the PensionPlan offered, *inter alia*, 401k Pension to DELOITTE

Employees, including PLAINTIFF

44.     **Defendant Traci Commons (**hereinafter **"Commons").** report into SVCS, as a  Lead

Experienced Recruiting Specialist. Commons is located Deloitte LLP Office, 50 North

Laura Street. Ste 3400 Jacksonville, FL 32202. Defendant Commons misrepresented

Plaintiff:  for Work-life-Balance. Defendant never said that Plaintiff had to work 40-60

weekly in addition to the travel time; Performance reviews will be conducted on August

2022 ; Fiscal year from June 2021-June 2022 instant performance is done for 2021;

Plaintiff had the information if Plaintiff had to work 80 hours a week, he would not have

accepted the position and left Cisco System. Deloitte came to Plaintiff while Plaitiff was

working at Deloitte. Plaintiff knew due to his medical condition he could not work the

hours required at Deloitte Consulting.  Defendant Commons is being is being sued in his

individual and official capacities.

45.     **Defendant Michelle Bandes (**hereinafter **"Bandes").** Commons report into SVCS,   as a

Lead TS ELE Onboarding Specialist.   Bandes is located Deloitte LLP Office, 1919 N.

Lynn St. Suite 1500, Arlington VA 22209. From 6/24/21 Plaintiff entered his Date of

Birth into a system called "Dstart". Usually, it takes three dates to perform Background

Check.   On July 9, 2021, Plaintiff received an email from Defendant Bandes, " Please

send me a clean, uncut copy of your diploma and I will upload the document. (the

university of Karachi)  You should also sign this release (wet signature) and return to

me (*Consumer Investigative Report*)   I'll need these documents no later than noon

(Eastern time) tomorrow to ensure that there is no delay in your start date."  On July 9th

prior to Noon". Defendant Bandes intent was to disqualifying Plaintiff due to the

violation of Compliance during the On-Boarding due to Plaintiff's Age. Defendant

Bandes is being is being sued in his individual and official capacities.

46.  **DEFENDANT RICHARD JOHNSON, (**hereinafter "Johnson") is a Deloitte

Consulting Managing Director. Johnson is located C/O Deloitte LLP., 650 S Tyron St

Suite 1800 Charlotte, NC 28202.At all times relevant, Defendant Johnson was Plaintiff's

manager and supervisor and had the ability to affect the terms and conditions of

PLAINTIFF'S employment.  Plaintiff complaint to Defendant Johnson, multiple

occasion, he did not engage Human Resources instant he became Hostile against

Plaintiff and lied. Defendant Johnson assigned failing projects; foster hostile work

environment; only hired employees under age of 50; discriminate against Plaintiff

provided training for younger employees in similar situated than Plaintiff.  Defendant

Johnson failed to provide Accomodation. Defendant Johnson is being is being sued in

his individual and official capacities.

47.  **DEFENDANT MANS JABAL (hereinafter "**Jabal" is a  DC, Specialist Leader/

Senior Manager.  Jabal is located C/O Deloitte LLP., 111 S. Wacker Dr Ste 1800

Chicago IL 60606. On Project A, on 7/12/21 On the first day Defendant Jabaal asked

how old are you. Plaintiff  stated 65 years old. Defendant Jabal responded why do not

you retire, why are you working and why do not you retire?  During the **Project A** he

said same comments multiple times in front of Defendant Vengo 8/2/21;   8/26/21. His

behavior was very hostile towards PLAINTIFF.  *and demining on7/13//21, 8/19;21 and*

*on 9/24/21* **Defendant Jabal wanted to know who Plaintiff is reporti  wa**nted to

know PLAINTIFF was reporting in next project.  On **Project B** Defendant 's behavior

was very similar as above and specially when PLAINTFF was in Doctor's Office he

called and yelled and project inaccurate information. This was confirmed by the an

email Deloitte provided to EEOC.  Defendant Jabal is being sued herein in her

individual and official capacities.

48.     **DEFENDANT JOEL VENGO**     (hereinafter "Defendant Vengo"). Vengo is a DC

Specialist Senior is a located at Deloitte LLP. 7900 Tyson One Place Suite 800 VA

22102. Defendant Vengo was the witness of Age Discrimination comments by

Defendant Jabal at least in three to four times during the twelve-week project. Defendant

Vengo was the witness of hostile work environment and he failed to report to the

Human resources. Multiple times Defendant Vengo asked me during the calls why

Defendant Jabal is worried about your age. ?. Defendant Vengo is being sued herein in

her individual and official capacities.

49.     **DEFENDANT NAVIN MUDALIAR**     (hereinafter "Defendant Mudaliar") is a

DC Specialist Leader/Senior Manager. He was Plaintiff's Coach and  is located C/O

Deloitte LLP., 1700 Market Pl. Philadelphia, PA 19103. Employed in DC and an

individual to which PLAINTIFF complaint multiple times reported the behavior,

hostility and Age discrimination of Defendant Jabal on multiple occasion and he

responded "**You do not want to get promoted right? Why ?**" was an individual

Defendant Mudaliar had the ability to affect the terms and conditions of PLAINTIFF'S

employment. Defendant Muldaliar told PLAINTIFF that he received three Due

Diligence in which two said that PLAINTIFF is operating on the next level (Senior

Manager).  Defendant Muldaliar is being sued herein in her individual and official

capacities.

50.     **DEFENDANT KELLY MEHGAN   (hereinafter "**Defendant Megan"**")** is/was the

Manager, Talent Business Advisor  in SVCS– Supporting  a subset of Deloitte

Consulting Business and Employees. Defendant Megan is located C/O Deloitte LLP.,

1700 Market Pl. Philadelphia, PA 19103. employed in Deloitte's Human Resources

Department in SVCS  and was an individual to which PLAINTIFF complained and

reported her discrimination/retaliation issues on multiple occasions. When Plaintiff

asked Defendant Megan about the complaint about Defendant Jabal, she took no action

and said it was closed.  When Plaintiff asked Defendant Megan, did Deloitte Medical

Doctor reviewed the "Health Care Provider Assessment Form "Defendant Megan

responded no Defendant Megan obtained approval from Business, means Defendant

Johnson. Defendant Megan violated HIPPA and she had the ability to affect the terms

and conditions of Plaintiff's employment. Defendant Megan is being sued herein in her

individual and official capacities.

51.     **DEFENDANT JAMES KOCSI   (hereinafter "**Defendant Kocsi**")** is/was DC Senior

Manager, he is located C/O Deloitte LLP., 500 College Road East Princeton NJ 08540,

he was Lead for Project B and Project C with (**Client 2**); . He failed to provide

accommodation when asked on 10/20/21 his response was Let me Check with

Defendant Johnson and had the ability to affect the terms and conditions of Plaintiff's

employment. Defendant Kocsi stop the Hostile work environment by Jimmy  Wong, a

Deloitte Senior Consultant  when " he shouted on 10/20/22 in front of 30 people

including Client.  Defendant Kocsi is being sued in his individual and official capacities.

52.     **DEFENDANT LISA BRADLEY (hereinafter "**Defendant Bradley**")** was employed in

Deloitte's Human Resources Department and was an individual to which Plaintiff

complained and reported her discrimination/retaliation/Hostile of Defendant mans on

10/14/202; She took no action of Hostile workplace. She is located C/O Deloitte LLP.,

695 East main Street Stamford CT 06901. On or about 12/15/2022 Plaintiff requested

Accommodations unable to travel due to restrictions. On 12/22/2022 Plaintiff's Doctor

completed provider Health Assessment Form and he stated Plaintiff cannot work beside

traveling; Deloitte or Medical Doctor never started the interactive Process with Plaintiff.

Deloitte medical doctor never called Plaintiff or his doctor. When Plaintiff told

Defendant Bradley, please reach out directly, her response we do not call. Defendant

Brdley failed to provide accommodation. It took Defendant almost 30 days to provide

temporary Accomodation for one month. Defendant Bradley is being sued in her

individual and official capacities..

53.     **DEFENDANT ROSEMARY HODGES        (hereinafter " Defendant Hodges**

**")** is/was THE Senior ELS TS Leave Specialist.  PLAINTIFF is on Approved Medical

Leave of Absence until November 14, 2024  by MetLife the Insurance carrier under the

GROUP Plan  Defendant Hodges  falsified on May 1, 2023  Long term Disability

Termed on 5/12/2023 and a personal leave of Absence  pay entered from May 16, 2023.

She causes the Ceases of the Benefits under the Group Plan a violation. she falsified and

entered a violation of the Group Plan. Defendant Hodges   had the ability to affect the

terms and conditions of Plaintiff's employment.  C/O Deloitte LLP, 1111 Bagby St Ste.

4500 Houston, TX 7702. Defendant Hodges is   being sued in his individual and official

capacities.

# <u>MATERIAL FACTS</u>

54.     Plaintiff is 66 years old male.  Plaintiff began working for Defendant Deloitte as a DC

Specialist Master/Manager on about July 12, 2021, earning a salary of approximately

$190,000 per year, plus benefits.

55.     Plaintiff earned Bachelor of Commence in Cost Accounting from University of Karachi;

he earned Bachelor Of Arts in in Computer information Systems from Iona university in

1981; he earned Masters of Science in Telecommunication from Iona University in

2002.

56.     Plaitiff stated in computers in 1978 when computer programs were punched on IBM

Hollerith Punch Cards; Plaitiff had been working in Computers over forty years and had

a passion of new technology kept him going.

57.     Plaintiff held position at Dean Witter Reynolds, Alliance Berenstain, Morgan Stanley;

New York Mercantile Exchange; Bank of America; CIGNA Healthcare; New York City

Department of Educations; Cisco;  On the Consulting side he worked for International

Network Services; British; Booz Allen Hamilton Telecommunications; and on Pre-Sales

for six years.

58.     On November 14, 2022 Plaintiff was approved for the Long-term Disability Benefits for

two years from November 14. 2022 – November 14, 2024 at 40% of salary based on

Deloitte LLP Group Insurance Plan which Plaintiff was entitled by the GroupPlan which

was governed by ERISA.

59.     Plaintiff become permanent disabled because Deloitte failed to provide Accomodation;

failed to review Provider Health Assessment; failed to start interactive process. Instant

60.     While Plaintiff was working at Cisco Systems, Deloitte started the recruitment process

        on May 17, 2021 by Defendant Commons, we are scheduling two interviews one tech

        and other one culture.

61.     On June 14, 2021 Plaintiff had Final Interview with Defendant Johnson

62.     On June 15, 2021 Plaintiff was asked to complete Deloitte Employment application,

        included salaries of previous positions.  Plaintiff completed the Deloitte applications on

        June 17, 2021.

63.     On June 21, 2021 Plaintiff received an Offer letter from Defendant Commons, Plaintiff

        signed the Offer letter on June 21, 2023.

64.     Deloitte has a policy that expects forces its employees "to retire in or around May

        following their 62nd birthday.  But, here Plaintiff was joining Deloitte & Touche at the

        Age of 65 few months shy to 66 years old. Deloitte and & Touche got concerns.

        Plaintiff not sign that he had to retie on the Offer letter on June 21, 2021

65.     Defendant Commons Misrepresented that Plaintiff will be required to work over 40-80

        hours per week; excluding Air Travel and Performance Review will be conducted in

        August 22.

66.     Plaintiff would not have accepted the Specialist Master position because of his back

        injury in 2017 because of the Disability limitations., and still be working and enjoying

        his passion.

67.     On June 22, 21 Plaintiff completed Deloitte Pre-Employment Application Employment

        references, educational degrees and Social Security Number and Data of Birth.

68. On or about June 23, 20231 First Advantage started Plaintiff' DELOITTE & TOUCHE LLP Background Screening.  First, on June 25, First Advantage was not able to verify educational degrees from University of Karachi, Pakistan;

69. The harassment did not end here, because Deloitte & Touch has never hired any one at the Age of 65 few months shy to 66 Years old.

70. Second, On June 28, 21, First Advantage was not able to verify employment records from previous seven years of employment First Advantages requested W2 records. On June 28, 21 provided W2 forms from last six years and verification letter from Cisco Systems.

71. Plaintiff resigned from Cisco Systems as Network Architect and return the laptop.; it seems all was well with the background screening.

72. Deloitte has a policy that expects forces its employees "to retire in or around May following their 62nd birthday

73. On or about August 21, CEO Adam Powick announced the firm would stop "expecting" employees  to retire when they turn 62.

74. During hiring and On-boarding Deloitte & Touch had policy to force employees retire at the Age, this is ADEA Discrimination in US.

75. On or about July 9, 2021 two days prior Plaintiff to start work at Deloitte on July 12, 2021 and Plaintiff had already resigned from Cisco Systems on June 28, 21. Received harassing email from Defendant Bandes, "**Please send me a clean, uncut copy of  your diploma and I will upload the document. (the university of Karachi). You should also sign this release (wet signature) and return to me *(Consumer Investigative***

**_Report)_. I 'll need these documents no later than noon (Eastern time) tomorrow to ensure that there is no delay in your start date ."**

76.  On July 9th, 21 Defendant Bandes intent was to disqualify Plaintiff due to the Compliance Violation during the on-boarding due to Plaintiff's Age.

77.  On June 8, 21, Plaintiff received a duplicate Marksheet from University of Karachi and emailed the Duplicate market sheet from University of Karachi and wet signed Consumer Investigative report.

78.  On July 9th, 21 when Defendant received the Marksheet notified Plaintiff he is all set to start on July 12, 21. Defendant Bandes notified Defendant Johnson and Defendant Johnson forward Plaintiff Project A ; Company A Kickoff invite at 9:11 a.m. on July 9, 2021. Defendant notified Defendant Jabal on July 11, 21 to include Plaintiff. Defendant Johnson could not spell Plaitiff's name.

79.  On July 12, 21 Plaitiff became first oldest employee in the history of Deloitte hired at the age of 65 years and 8 months.

80.  All similar situated employees were much younger than 50 years of age under Defendant Johnson's Business Area.

81.  Despite my stellar performance and highly impressive credentials, Deloitte discriminated
against me during my onboarding and employment. From Day one, Mans Jabal started to harass me, and raise his voice. I notified my Coach Navin Muldaliar (7/16/21) and Mr. Richard Johnson on (7/16/21). I was assigned a project on reporting to Senior leader (Gururaj Karanam (overall) and Mans Jabaal (technical)

82.     Under Defendant Jabal, Defendant Johnson, Defendant  Muldaliar, supervision and

Defendant  Barnes on threatening on (7/8/21) due to age.  Plaintiff experienced unequal

and hostile treatment due to age since Plaintiff joined on 7/12/21. From day one

Defendant Jabal harassed and reported to Defendant. Johnson (7/16/21), Muldaliar

(7/15/21). No action was taken

83.     However, on July 12, 2021, Plaintiff started on-boarding at Defendant Deloitte; First

meeting. Defendant Jabal schedule a sync-up call about Client A Project A;

between12:00 Noon-1:00 p.m.  Client A call was scheduled at between 1:00 p.m. – 2:00

p.m. The First Incident of Age Discrimination Occurs on July 12, 2021:

 During the meeting with Defendant Jabal and Defendant Vengo witnessed.  Defendant
Jabal discovered that Plaintiff had over 45 years of experience in Technology and
Networking. Defendant Jabal than asked Plaintiff how old are you? Plaintiff responded
65 years old. Defendant Jabal than said to Plaintiff why are you still working? Do you
want to get promoted to Senior Manager? Is that why you are working? Plaintiff replied
to Defendant Jabal, I want to work, and I am not looking for any advancement withing
the company**.**

84.     Upset, Plaintiff went to Defendant Johnson and complained about Defendant Jabal

discriminatory comments and abusive and hostile behavior **(Plaintiff's first complaint).**

On July 15, 21 Plaintiff reported the incident to Defendant Johnson. Dependent Johnson

brushed off by saying "Mans is new to the Consulting; I will speak with him"

85.     On July 16, 21 Plaintiff reported the incident to Defendant Muldalair his response was

"you do not want to get promoted "

86.     During Plaintiff's contact with Defendant has created hostile environment for Plaintiff

.Shortly after beginning his mployment at Defendant Deloitte, Plaintiff

started to experience ongoing and continuous harassment, discrimination and

retaliation by Project A by Defendant Jabal.

87.   During discovery with the Client A in in Project A Plaintiff discovered the Statement of Work ("Sow") was inaccurate, when notified to both Defendants Jabal and Defendant Johnson, continuous harassment, discrimination and Retaliation. Defendant Jabal raising his voice.

88.   Same comments about Plaintiff's ag as in #92 was said on August 2, 2021 discriminatory comments wild Defendant Vengo was the witness.

89.   On or about   August 5, 2021 , Gururaj Karanam, who was the overall Leader and the contact with Client, notified Defendant Jabal and Defendant Johnson that Client has stated that the SoW is inaccurate and needs to be corrected.

90.   Same comments about Plaintiff's ag as in #92 was said on August 16, 2021 discriminatory comments wild Defendant Vengo was the witness.

91.   The harassment and retaliation became so severe, Plaintiff went to see the Doctor on August 18, 2021 and was put on anti-depression medication.

92.   Plaintiff worked 60-80 hours a week, during August and September 2021 on Project A

93.   Same comments about Plaintiff's ag as in #92 was said on August 26, 2021 discriminatory comments wild Defendant Vengo was the witness

94.   Due to working 60-80 per week Plaintiff's back pain surfaced and it was painful; he scheduled a Orthopedic Surgeon appointment.

95.   Plaintiff notified Defendant Johnson not to have Plaintiff work with Defendant Jabal and Defendant Johnson agreed.

96.   Plaintiff competed the Project A successfully on September 30, 2021 in  Client A; and was assigned to Project B with Client B in Phoenix, Arizona.

97.    Defendant Jabal harassed Plaintiff on or about September 30, 2021 when Plaitiff told

him that he is already assigned to  a project in Phoenix Arizona starting October 1, 2021,

Defendant Jabal   asked to provide him the name of the new Senior Manager, he wants

to talk with him about Plaintiff.  Plaintiff responded, "I hope I will not work with you

again in anyone of the projects and I have notified my concerns to Defendant Johnson"

98.    On Project A Plaintiff received Performance Snapshot form Gururaj Karanam and

Defendant Jabal.

   Gururaj Karanam  wrote – "*Asad has done a phenomenal job on the Client A
project and has helped credentialize our network architecture and design skillsets and
capabilities. The client is very appreciative of the work and value Asad delivered on the
engagement. Asad is committed and has great work ethics. I would love to bring him
back on my next engagement.*"

      Defendant Jabal wrote on 9/17/21; "*Asad has done a great job ln working with
client requirements and has been providing deep technical expertise to their teams. His
extensive experience in networking created a positive image in client's mind and
increased project confidence.*"

99.    On or about 10/1/21 Plaintiff received a call from Defendant Kocsi  and notified that

Defendant Johnson has assigned Plaintiff to Client B and Project C . Plaintiff has to be

on-side starting the following week in Phoenix Arizona. When Plaintiff asked On or

about Plaintiff start working with Defendant Wong over the Zoom.

100.   Plaintiffs was assigned to do Client B's to Discover Network Architecture  and identify

any opportunities.

101.   Plaintiff arrived in Client B's location on October 12, 2021.  Plaintiff started to work

with Defendant Wong, he explaining the issue on hand when Plaitiff "snapped" in anger

and star yelling at Plaintiff. On October 14, 21 Plaintiff notified Defendant Kocsi, he

took no action of Hostile work Environment

102.    On October 18, 21 Plaintiff saw Orthopedic Surgeon who advised out of work until October 31, 2021 and no travel with restrictions until Plaintiff see Neuro Surgeon.

103.    On October 18, 2021 Plaintiff arrived at Client B's locations in Arizona and notify Defendant and Plaintiff's condition and requested Accomodation and handed over Dr. Shifrin disability note to Defendant Kocsi. herein attached.

104.    Dr. Shefrin Disability Notes states:

- Patient disabled from 11/18/21 Thru 11/1/21

- Patient may return restrictions from 11/1/21 thru Until seen by Neurosurgery

- No lifting; Squatting or Travel

105.    Defendant response was let me check with Defendant Johnson and never responded to Plaitiff. Plaitiff continued to work.

**Defendant Deloitte, Defendant Johnson and Defendant Kocsi were on Notice.**

**First violation of Failure to provide Accomodation and start interactive process.**

106.    On October 22, 2021, due to a technical issue at Client B during the migration, all hands meeting was scheduled to discuss the solution(s) and plan of action.  While Plaintiff was to document Plan of Action. "Defendant Wong, berated Plaitiff in front of Client B Team and Team Deloitte". Defendant Kocsi saw by himself and did not take any action to stop the Hostile work environment.

107.    On or about October 25, 21 Defendant Johns wrote a SoW to perform Network Risk Assessment for the Client B's Migration. The Project C to start on first week of December with two other resources. One of the resources was Defendant Jabal.

108.  During the month of November Defendant Jabal was on PTO and mandatory manager's training, Plaintiff did not had much interaction with Defendant.

109.  On November 3, 21 Plaitiff had Spinal MRI done and  he had schedule Neurosurgeon appointment on December 13, 21

110.  When Defendant Jabal return in end of November and asked if Plaintiff to meet him in Arizona; Plaintiff met   Defendant Jabal in Arizona and interduce him  Client and Deloitte Team.

111.  One of the Director wanted to meet Plaintiff for Dinner on 4th of November. Plaintiff traveled and return back the same day after the dinner, because his condition was decorating fast.

112.  On December 3, 21 Plaintiff was at the doctor's Office and Defendant Jabal started to yell at Plaintiff that Client A is having problem with Plaintiff.  Plaintiff told Defendant Jabal stop the harassment, and he will file a complaint against Defendant Jabal with Human Resources

113.  On December 14, 21, Defendant Johnson reached to Plaintiff and removed Plaintiff from the project stating that Client B had a problem.

114.  Plaintiff confirmed with Defendant Kocis and he stated "Richard told him the reason Asad was removed because issue with Mans Jabal"

115.  On December 13, 21 Plaitiff filed a complaint against Defendant Jabal, Defendant Bradley was assigned to investigate. No action was taken.

116   Below is the recommendation from Defendant Kocsi on Project B and Project C at Client B:

"Asad brings the technical depth and knowledge at the client to solve their most complex problems. He is bold in his out of the box thinking, evaluates not only the technical challenges at hand but also consider the business drivers behind his solutions"

118.    Below is the Recommendations from Client B:

I personally had a great opportunity and success working with Asad Gilani at Client B He is an incredible way of communicating with team, great planning, and strategies to achieve great success. He is well versed team leader in a broad networking spectrum.

119.    Plaintiff submitted a Accomodation request on 12/15/21 with the letter from the Plaintiff

Neuro Surgeon 12/13/2 1no further travel.

120.    On 12/15/21 Defendant Bradley – Human Resources, requested have Plaintiff signed the

Authorization for Neurosurgeon to complete Provider Assessment Form.

121.    On 12/21/21 Plaintiff Nuro Surgeon (Dr. Saran Rosner) completed the signed "Provider

Accomodation assessment Form" and it was forwarded to Defendant Bradley on

12/22/21 attached herein.

122.    The Provider Accomodation assessment Form stated:

The above-referenced employee, whom we understand is your patient, has requested an accommodation from our from his/her employer, which necessitates that we review his/her **medical condition, in order to determine his/her ability to perform the essential functions of his/her position, with or without a reasonable accommodation from the employer.** In connection with this, your assistance in the completion of this form is greatly appreciated. ***The information provided by you will enable the employer (and our medical review officer) to engage in an interactive assessment with the employee (and you or one of your staff members, to the extent required), to determine if a reasonable accommodation is necessary and, if so, the type of accommodation.*** Please understand that the employer complies fully with the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act of 2008, and applicable state and local laws prohibiting discrimination against individuals with disabilities. **The information you provide will be kept confidential and used solely in accordance with these laws.** Please also understand that your patient has signed an authorization for you to release this information to us. This authorization appears at the end of this form.

123.    Defendant Deloitte and Defendant Bradley and Defendant Kelly never reviewed the

medical condition provided by Dr Saran Rosner on 12/22/21.

124.    **Defendant Deloitte and Defendant Bradley and Defendant Kelly or Deloitte**

**Medical Officer never reviewed nor started an Interactive process with Plaintiff.**

125.    **Defendant Deloitte was on Notice on Plaintiff's Accomodation Request and**

**Medical condition.**

126.    **Defendant Deloitte failure to Accommodate.**

127.    The essential functions of the employee's position include, but are not limited to, the
following:
**The essential functions of the employee's position include:**

> a. Employee may need to lift/carry a laptop throughout the day
> b. Employee will be required to build relationships and engage in verbal (in person and via
> phone) and written communications to effectively understand and complete required tasks
> c. Employee will typically be working at a desk on a laptop computer (e.g., produce/edit highquality
> documents without mistakes in a timely fashion)
> d. Employee will need to work independently to complete required tasks or coordinate work of
> others
> e. Employee will need to have the ability to make decisions and manage time as to how to
> complete multiple job responsibilities
> f. **Employee may work approximately 8-12 hours per day/40-60 hours per week**
> g. Depending on assignment, employee may be expected to travel on a weekly basis via airplane,
> rental car or train and incur overnight stays away from home 2-4 nights per week

128.    Defendant Commons misrepresented and never told Plaintiff that he had to work -12

hours per day /40-50 hours per week.

129.     Section B: To be completed by employee's health care provider states as follows: Dr.

Saran Rosner completed. Attached herein

130     **Dr Rosner responded to question 1 about Plaintiff's condition:**
 Question: Does your patient have a physical or mental impairment that substantially limits
one or more of his/her major life activities, such as, for example, caring for himself,
performing manual tasks, walking, seeing,  earing, speaking, breathing, learning, working,
sitting, standing, lifting, reading, etc.?

**Answer Yes**

131.    **Dr Rosner responded to question 2 about Plaintiff's condition:**
Does your patient have a physical, mental or medical impairment, infirmity or condition that
is demonstrable by accepted clinical or laboratory diagnostic techniques?
**Answer Yes**

132.    **Dr Rosner responded to question 3 about Plaintiff's condition:**
Please list the functional limitations which result from this impairment, infirmity, or condition.
(Example: patient is unable to sit for long periods of time).

**Answer Sciatica with standing walking and sitting**

133.    **Dr Rosner responded to question 4 about Plaintiff's condition:**
Please specify the essential job functions, including any of those provided above, that you
believe your patient cannot perform.

**Answer Sciatica  lifting, caring, travel**

134.    **Dr Rosner responded to question 5 about Plaintiff's condition:**

After reviewing the above checked essential functions, describe the manner in which the functional limitations that result from your patient's condition limit your patient's ability to perform the essential functions of his position.

**Answer Sciatica  2 degree to herniated lumber disc aggravated by activity.**

135. **Dr Rosner responded to question 6 about Plaintiff's condition:**
Do you believe a job modification or other work accommodation will enable your patient to perform the essential functions of their position?

**Answer Not Yet.**

136. Defendant Bradley did not accept the above completed, Provider Accomodation Request Form. Defendant Bradley, when is Plaintiff next visit with Dr. Rosner.

137. Plaintiff asked Dr. Rosner's Office Visit to put the next visit date 7/7/22 on the Provider Accommodations Form.

138. Based on Dr. Rosner response, Plaintiff would not be able to work with Accomodation.

139. Defendant Deloitte, Defendant Bradley, Defendant Kelly, Defendant Johnson knowingly the medical condition of Plaintiff forced him to work against doctors' advice and never start the interactive process.

140. Defendant Deloitte, Defendant Bradley, Defendant Kelly, Defendant Johnson should have known the condition and should have told Plaintiff to apply for Short Term Disability benefits, but they did not.

141. Plaintiff went for additional medical diagnostics ordered by Dr. Rosner on 1/3/22; 1/10/22 for EMG test.

142. Defendant Bradley or Deloitte Medical Doctor never reviewed the the Accomodation request and never started the interactive process.

143. After one month when Plaintiff requested the Accomodation Plaintiff requested Accomodation on December 16, 21, On January 19, 22, granted Plaintiff Temporary Accomodation until 2/7/22.  Defendant Brandley mentioned that Defendant Kelly – Talent Business Adviser will reach out to check on accommodation.

144.     Defendant Kelly never reached out to Plaintiff to check for the Accomodation.

145.     On January 20, 22, Defendant Johnson assigned Plaintiff a failing project on **Company C**. Joe Andrew reached out to Plaintiff on January 22. Defendant Johnson knew that two of the his resources assigned to this project since August 4, 21 (Ronald Bannister and Mark Druker) has not produced the results on the projects. Client X requested both resources to be removed from the project.  Joe Andrew knew that this is a failing project as well he moved to Singapore.  The other two Advisory consultants were on the project located in India, their working hours from 12:00 a.m. est. – 11:00 am est. Customer was on eastern time zone.

146.     Plaintiff notified Joe Andrew and Partner Raj Mehta medical condition of Plaintiff that he is on Accomodation.

147.     Plaintiff went to see Dr. Rosner on 2/7/22 and received the updated Accomodation request that Plaintiff will be evaluated on March 8, 22. Plaintiff forward the request on February 15, 22 to Defendant Bradley. Plaintiff never received any response from Defendant Bradley

148.     Plaintiff had to work 60-80 per week around the clock and successfully deliver the project in eight weeks.

149.     During this time and Defendant Deloitte, Defendant Bradley, Defendant Megan and Defendant Johnson's Failure to Accommodate, Plaintiff's medical condition become worst.

150.     Joseph Andres wrote:

> Asad has done a great job for on this engagement, considering difficult situation with a client that was going through a merger.  He came in and was able to adjust the project activities in alignment with the client's needs, which seems to be inconsistent and volatile at times. I have to comment Asad for maintaining a professional attitude, while going extra mile to accommodate a difficult stakeholder.

151.    Client X, Karen Muhammad wrote :

"I worked with Asad Gilani on a high-priority information Security project at Client C. Asad was a valuable contributor, and a third party expert network design engineer consultant. Asad contribution was critical to the project success. Asad's ability to understand business and technical problems and provide solutions based on industry best practices and lessons learned from previous assignments was invaluable. Asad is an easygoing individual who can engage and connect with  all levels of leadership which help them gain confidence in his work."

152.    On or about Plaintiff was assigned another failing project with Client D, by Defendant

Johnson.  Where Client D, had requested Ronald Bannister to be removed who was on

the project for over two months.  Plaintiff was assigned on the project on April 27, 21 –

May 31, 21.

153.    Because Ronald Bannister failed to provide the network Solution Client D, the Client

and Deloitte Team had him removed. It seems Defendant Johnson knew the failing

projects because Ronald Bannister and Defendant Johnson were good friends.  After

failing and two Clients requested him to be removed, he still works for Deloitte.

154.    Plaintiff had to understand the issue on-hand, discovery and solution and process for

migration. Plaintiff had to work 60-80 hours. Plaintiff delivered a successful project on

May 13, 2021

155.    Michael Luu, Senior Manager who Plaintiff reported wrote:

"Asad was able to quickly jump in and diagnose the issue"

156.    Rahul Chodavarapu, Partner reported wrote:

" Asad has a great network knowledge and is a SME. He gained respect of the client in a short time. Asad defined the use cases for Cloud migration with/without Re-ip working well with the client. Opportunity for Asad to think strategically and understand and overall objectives that we are working towards. It is really unfortunate that Asad had to go on medical leave but we needed the expertise from him. "

157.    Plaintiff delivered a successful solution early on May 12, 21 and due to his medical

condition filed a short-term disability claim starting from May 16, 21

158     As notes above Plaintiff performed during all above projects beside Defendants
        decimated because he was almost 66 years old; Failure to Accommodate or start
        Interactive Process; failure to Compensate Bonus or Raise.

159.    Plaintiff delivered a successful solution early on May 12, 21 and due to his medical
        condition filed a short-term disability claim starting from May 16, 21

160.    On or about May 11, 21 Plaintiff filed a complained officially complaint to Tyran
        Cambell – Human Resources against Defendant Johnson, Defendant Jabal Muldaliar.
        No action was taken against them

161.    Ms. Cambell asked " Did Mr. Jabal discriminated against your age"  Plaintiff responded
        all the times.


162.    Defendants Deloitte retaliated against Plaintiff from July 12, 21 thru May 13, 222.
        Defendants assigned failing projects, for Plaintiff to fail, Pliantiff was successful in
        delivery of each project for all four companies.

163.    Deloitte created Hostile Work Environment, and after reported to Human Resources
        (Defendant Bradley; Defendant Kelly and Ms. Campbell). Deloitte took no action.

164.    Plaintiff filed Short-term Disability Claim on Friday May 13, 22. Short Term Disability
        was approved until November 14, 2022

165.    On October 10, 22 Plaintiff received and email from US Leaves Team about Long Term
        Disability Plan and Long-Term Disability Summary Plan effective January 2012.
        Deloitte Leaves Team was operating on Long Term Group Plan effective January 2012
        while long term Disability Summary Plan was available amended January, 2022.
        Knowling providing long term Plan which does not apply.

166.    The Long Term Group Plan effective  January 2012 states:

"After 12 months of absense from the firm, your employmnet will be considered toi

have ended and your groupo insurance will automatically terminate at the end of the

twelfth months following your last day worked" Defendend Rosemary was the contact

person from the Leavs Department

167.    There above item does not apply, because Plaintiff found Long Term Group Policy

Amended January 22.

168.    There above item does not apply, because Plaintiff found Long Term Group Policy

Amended January 22.  On 2/8/23, Defendant Hodges wrote in email, If you have not

returned to work, at 12 months on leave of absence, your leave of absence will be

changed from a Long Term Disability leave to a Personal leave"

169.    Plaintiff responded that Deloitte will be in violation to convert my Medical Leave to

Personal Leave. The personal Leave of absence is not a Medical Leave of Absence

and does not apply

170.    On March 6, 2023 Plaintiff emaied a letter to Defendant Hodges, where he stated:

**In Long Term Disability Plan Effective 2022 states:**
**Medical Leave CA. A19)**

1) *If you are on Medical Leave, the Long-Term Disability Plan will continue to*
   *cover you for* as *long* as *you are* ***considered an employee and are on Medical***
   ***Leave.***
2) *2) You must pay your regular contributions for this coverage for up to the 12*
   *months of the Medical Leave unless you commence Long-Term Disability*
   *benefits with* a ***waiver of premium.***

171.    On March 7, 2023 Plaintiff mailed  via UAMAIL a letter to request a Master Group Plan

Administrator for the Deloitte LLP Group and requesting Appeal including the March 6,

letter.

172.    On March 14, 2023 Defendant Hodges mailed me a letter  stating

   a)   MetLife indicates there is no estimated release date for your disability at this time

   b)   Effective at 12 months of leave, coverage and/or participation in the following additional

        Deloitte benefit programs will be terminated effective May 16, 2023

   c)   During your approved medical leave and up until 12 months, you have been accruing PTO. As a

        result, you will receive your accrued but unused PTO balance payout in a lump sum as soon as

        administratively possible, usually the 2nd biweekly after reaching 12 months on medical leave.

        (This PTO pay is not reported to MetLife and therefore does not affect your LTD benefits.)

173.    On May 1, 2023, Plaintiff confirmed PTO paid out Deloitte Policy

           "Until you are no longer on Long Term Disability with Deloitte, and processed as separated
           employee. That is when a PTO payout will occur if there is an outstanding balance
           remaining."

174.    On March 31, 2023 Plaintiff received via email and USMAIL a deniel of the Appeal, by

        Defendant  Plan Administrator for the Deloitte LLP Group and received the Master

        Group Plan.


175.    Platiff filed a Notice of Appeal on April 2, 202 giving them 60 days to response and

        adminstratively exaust the Appeal Process as required by ERISA.

176.    On April 13, 2023 Plaintiff received  from Defendant Deloitte, "Waiver of Premiums"

        of Plaitiff Health and Insurance Benefits Coverage based on Long Term Disability event

        on 11/14/22; Based on this Waiver of Premiums, Plaintiff Health and Insurance benefits

        Covers are Waived by   Defendant  Plan Administrator for the Deloitte LLP Group of

        $1,227.63 per month

177.    On May 1, 2023  Defendant Deloitte and  Defendant Hodges  violated by, your long

        term disability was termed on 5/12/23 and a personal leave of absence with no pay was

        entered on 5/1/23 to start on 5/15/23 by R. Hodges.

178.   Defendant  Plan Administrator for the Deloitte LLP Group violated ERISA Plan

179.   The event generated  by Defendented Hodges cease of Plaitff's benefits

180    Defendant  Plan Administrator for the Deloitte LLP Group retaliated against Plaintiff and

by ceasing Terminated Plaintiff on May 31, 2023

181    On June 2, Plaitff received the Deniel of an Appeal. Administrator for the Deloitte LLP

Group violated Feudatory rights under ERISA.

182.   Defendant Deloitte  also breached its fiduciary duty to Asad Gilani  by failing to

provide cease benefits,retaliation and termination  benefit under the GroupPlan.

183.   In addition, Asad Gilani maintains that he is entitled to a benefit because Deloitte

.

184.   Defendant Retirement Appeal Committee, Defined Contribution Profit Sharing of

Deloitte LLP.  Retirement Appeal Committee, Defined Benefits Pension Plans of

Deloitte LLP;  had  breached its fiduciary duty to Asad Gilani  by failing to provide

cease benefits, benefit under the ContributionPlan.

185.   On 11/29/22 Plaintiff was supposed to receive 9.3 percent credited to my Cash

Balance Account. Plaintiff queried the benefits Administrator who denied my service

credit of 6% on February 10, 2023.

186.   Asad Gilani filed an Appeal on April 2, 2023. The sixty days had passed on June 1,

2023 and Retirement Appeal Committee, Defined Contribution Profit Sharing of

Deloitte LLP.; Retirement Appeal Committee, Defined Benefits Pension Plans of

Deloitte LLP; failed to provide the response.

187.   Defendant Retirement Appeal Committee, Defined Benefits Pension Plans of Deloitte

LLP had  breached its fiduciary duty to Asad Gilani  by failing to provide cease benefits,

benefit under the PensionPlan.

188.     Asad Gilani filed an Appeal on April 2, 2023. The sixty days had passed on June 1,

         2023 and Defendant Retirement Appeal Committee, Defined Benefits Pension Plans of

         Deloitte LLP Retirement Appeal Committee, Defined Benefits Pension Plans of Deloitte

         LLP; failed to provide the response to Asad Gilani.

189.     Defendants never engaged in a good faith interactive process with Plaintiff  nor

         did they attempt to accommodate his  requests

190      Instead, Defendants wrongfully terminated Plaitiff Benefits while Terminated Plaintiff.

191.     While employed at Deloitte, Plaintiff  was exposed to a hostile work environment that

         was permeated with discriminatory ridicule, insults, humiliation, scrutiny, unequal

         treatment, adverse employment actions, and other abusive conduct by Defendant Jabal,

         Defendant Johnson and the members of his team.

192.     The hostile work environment to which Plaintiff  was subjected made it difficult for

         Plaintiff to perform the duties of his  employment and made the workplace intolerable,

         but Plaintiff completed all projects successfully.

193.     Defendants' ongoing and systematic harassment of/against Plaintiff over the course of

         months was a continuing violation of Plaintiff's  rights.

194.     Collective Defendants  treated Plaintiff  this way solely due to his age and  disability and

         due to his  request(s) for reasonable accommodations

195.     Collective Defendants acted intentionally and intended to harm Plaintiff..

196.     Collective Defendants unlawfully discriminated against, retaliated against,

         humiliated, degraded, and belittled Plaintiff. As a result, Plaintiff suffers loss of

         rights, emotional distress, and loss of income capacity being permanently disabled.

197.    Collective Defendants'' ongoing and systematic harassment of/against Plaintiff over the course of months was a continuing violation of Plaintiff's rights.

198.    Collective Defendants As a result of the acts and conduct complained of herein, Failure to Accommodate, Plaintiff has become disabled and unable to work loss of employment, financial hardship, loss of income, the loss of a salary, loss of bonus, loss of employment benefits, loss of retirement benefits, stress, humiliation, pain and suffering, major inconvenience, other compensation which such employment entails, special damages, and great inconvenience.

199.    Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses

200.    Collective Defendants acted maliciously, willfully, outrageously, and with full knowledge of the law. As such, Plaintiff demands damages as against Collective Defendants, jointly and severally.

## FIRST CASE OF ACTION FOR DISCRIMINATION
## AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 ("ADEA")
### *(Against Defendant DELOITTE)*

201.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

202.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint. Age Discrimination in Employment Act of 1967 ("ADEA"),

Section 29 U.S.C. §§ 621 *et seq* ADEA. "Discrimination," provides

> (b) It is therefore the purpose of this chapter to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment.

35

203     Defendant Deloitte violated this section as set forth herein.

204.    At all times. Plaintiff suffered from age discrimination at Deloitte.

205.    Plaintiff disclosed his age to Defendant on June 16, 2021

206.    Defendants intended to subject Plaintiff to a hostile work environment and tried to
        remove Plaintiff from his employment.

207.    Defendants discriminated against and retaliated a Plaintiff against Plaintiff due to his
        age and for engaging in protected activity.

208.    Collective Defendants had no good faith business justification for any of the actions
        taken against Plaintiff as alleged here.

209.    As a result of the Collective Defendants' action, Plaintiff was extremely humiliated,
        degraded, victimized, embarrassed, and emotionally distressed.

210.    Collective Defendants As a result of the acts and conduct complained of herein, Failure
        to Accommodate, Plaintiff has become disabled and unable to work loss of employment,
        financial hardship, loss of income, the loss of a salary, loss of bonus, loss of
        employment benefits, loss of retirement benefits, stress, humiliation, pain and suffering,
        major inconvenience, other compensation which such employment entails, special
        damages, and great inconvenience.

211.    Collective Defendants conduct has been malicious, willful, outrageous, and
        conducted with full knowledge of the law.

212.    Plaintiff is entitled to the maximum damages allowable under this law, including
        attorney's fees and costs.

**SECOND CAUSE OF ACTION FOR RETALIATION**
**AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 ("ADEA**
*(Against Defendant DELOITTE)*

213.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs

of this complaint. Age Discrimination in Employment Act of 1967 ("ADEA"),

214.   The ADEA prohibits retaliation, interference coercion, or intimidation.

215.   Pursuant to 42 U.S.C. § 2000e-3(a),

> Pursuant to 42 U.S.C. § 2000e-3(a), employers are prohibited from discriminating against a
> person for opposing any practice that is prohibited as an unlawful employment practice by or for
> making a charge or participating in an investigation or proceeding under. The Age
> Discrimination in Employment Act ("ADEA") contains the same language prohibiting retaliation
> against an individual who files a complaint or participates in an investigation or proceeding
> related to the ADEA.

216.   Defendant DELOITTE violated this section as set forth herein.

217.   At all times, Plaintiff suffered from AGE retaliation, Defendants perceived that Plaintiff was suffering

from AGE retaliation.

218.   Plaintiff disclosed his AGE to Defendant Deloitte, Defendant Jabal, Defendant Vengo. Defendant Jabal

asked why Plaintiff does not retire, Why is Plaintiff is still working to get a promotion. Plaintiff just stated

I just want to work

219.   Plaintiff continues to complain to Defendant Deloitte, Defendant Johnson, Defendant Muldaliar,

Defendant Bradley, Defendant Kelly  of hostile work environment and ongoing discriminatory actions

against him.

220.   In response, Defendants took no real action to alleviate the Plaintiff's complaints instant

began to accuse Plaintiff of violating of teaming and not getting along with his team – in

an effort to assure that Plaintiff would be wrongfully removed from his employment.

221.    Defendants discriminated against and retaliated against Plaintiff due to his age and for engaging in protected activity.

222.    Collectives Defendants had no good faith business justification for any of the actions taken against Plaintiff as alleged here.

223.    As a result of the Collective Defendants' action, Plaintiff was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

224.    Collective Defendants As a result of the acts and conduct complained of herein, Failure to Accommodate, Plaintiff has become disabled and unable to work loss of employment, financial hardship, loss of income, the loss of a salary, loss of bonus, loss of employment benefits, loss of retirement benefits, stress, humiliation, pain and suffering, major inconvenience, other compensation which such employment entails, special damages, and great inconvenience.

225.    Collective Defendants conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

226.    Plaintiff is entitled to the maximum damages allowable under this law, including attorney's fees and costs.

### THIRD CAUSE OF ACTION FOR DISCRIMINATION
### <u>UNDER THE NEW YORK STATE EXECUTIVE LAW</u>
*(Against All Collective Defendants)*

227.    Collective Defendants conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

228.   Defendant DELOITTE violated this section as set forth herein

229.   Individual Defendants Bandes, Johnson, Jabal, Vengo, Kelly and Bradley are equally

liable for **aiding and abetting** the discriminatory conduct of their employer,

DELOITTE, against Plaintiff.

230.   Defendants intended, instead, to subject Plaintiff to a hostile work environment and to

remove Plaintiff from his employment.

231.   Defendant discriminated against and retaliated against PLAINTIFF due to his age and

engaging in protected activity.

232.   Collective Defendants had no good faith business justification for any of the actions

taken against Plaintiff as alleged herein.

233.   As a result of the COLLECTIVE DEFENDANTS' actions, PLAINTIFF was extremely

humiliated, degraded, victimized, embarrassed, and emotionally distressed.

234.   Collective Defendants As a result of the acts and conduct complained of herein, Failure

to Accommodate, Plaintiff has become disabled and unable to work loss of employment,

financial hardship, loss of income, the loss of a salary, loss of bonus, loss of

employment benefits, loss of retirement benefits, stress, humiliation, pain and suffering,

major inconvenience, other compensation which such employment entails, special

damages, and great inconvenience.

235.   Collective Defendant's conduct has been malicious, willful outrageous, and conducted

with full knowledge of the law.

236.    Plaintiff is entitled to the maximum damages allowable under this law, including

attorney's fees and costs.

## FOURTH CAUSE OF ACTION FOR *RETALIATION*
## UNDER THE NEW YORK STATE EXECUTIVE LAW
### *(Against Collective Defendants)*

237.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this Complaint.

238.    The New York State Executive Law § 296(7) provided that it shall be unlawful

discriminatory practice: "*For any person engaged in any activity to which this section*

*applies to retaliate or discriminate against any person because he has opposed any*

*practices forbidden under this article.*"

239.    Defendant Deloitte violated this section as set forth herein.

240.    Individual Defendants Bandes, Johnson, Jabal, Vengo, Kelly and Bradley are equally

liable for **aiding and abetting** the discriminatory conduct of their employer, Deloitte,

against Plaintiff.

241.    Defendants intended, instead, to subject Plaintiff to a hostile work environment and to

remove Plaintiff from his employment.

242.    Defendant discriminated against and retaliated against PLAINTIFF due to his age and

engaging in protected activity.

243.    Collective Defendants had no good faith business justification for any of the actions taken

against Plaintiff as alleged herein.

244. As a result of the Collective Defendants actions, Plaintiff was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

245. Collective Defendants As a result of the acts and conduct complained of herein, Failure to Accommodate, Plaintiff has become disabled and unable to work loss of employment, financial hardship, loss of income, the loss of a salary, loss of bonus, loss of employment benefits, loss of retirement benefits, stress, humiliation, pain and suffering, major inconvenience, other compensation which such employment entails, special damages, and great inconvenience.

246. Collective Defendant's conduct has been malicious, willful outrageous, and conducted with full knowledge of the law.

247. Plaintiff is entitled to the maximum damages allowable under this law, including attorney's fees and costs.

## FIFTH CAUSE OF ACTION FOR *DISCRIMINATION* UNDER THE NEW YORK STATE EXECUTIVE LAW
### *(Against Individual Defendants Bandes, Johnson, Jabal, Vengo, Kelly and Bradley)*

248. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

249. The New York State Executive Law § 296(6) provided that it shall be unlawful discriminatory practice: "*For any person to **aid, abet,** incite compel or coerce the doing of any acts forbidden under this article, or attempt to do..*"

250. Individual Defendants Bandes, Johnson, Jabal, Vengo, Kelly and Bradley violated this section as set forth herein.

251.   Individual Defendants Bandes, Johnson, Jabal, Vengo, Kelly and Bradley personally participated in the actions at issue in this Complaint.

252.   Defendants intended, instead, to subject Plaintiff to a hostile work environment and to remove Plaintiff from his employment.

253.   Thereafter, Plaintiff was subjected to a hostile work environment permeated with ridicule, insult increased scrutiny, unfair meetings, unreasonable micromanaging, verbal abuse, humiliating behavior, unreasonable critique, bullying

254.   Thus, intentional failure/refusal to Defendants discriminated against and retaliated against Plaintiff due to his age and engaging in protected activity.

255.   Defendant Johnson assigning failing projects which can be used against Plaintiff.

256.   Collective Defendants had no good faith business justification for any of the actions taken against PLAINTIFF as alleged herein.

257.   As a result of the Collective Defendends actions, Plaintiff was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

258.    As a result of the acts and conduct complained of herein, Failure to Accommodate, Plaintiff has become disabled and unable to work loss of employment, financial hardship, loss of income, the loss of a salary, loss of bonus, loss of employment benefits, loss of retirement benefits, stress, humiliation, pain and suffering, major inconvenience, other compensation which such employment entails, special damages, and great inconvenience.

259.   Defendants Bandes, Johnson, Jabal, Vengo, Kelly and Bradley conduct has been malicious, willful outrageous, and conducted with full knowledge of the law.

260.    Plaintiff is entitled to the maximum damages allowable under this law, including

         attorney's fees and costs.

### SIXTH CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATION CODE
#### (*Against Collective Defendants*)

261.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

         this Complaint.

262.    214.    The New York City Administrative Code §8-107(1) provides:

         It shall be an unlawful discriminatory practice: (A) For an employer or an or employee or
         agent thereof, because of the actual or perceived … age … of any person, to refuse to hire
         or employ or to bar or to discharge from employment such person or to discriminate
         against such person in compensation or in terms, conditions or privileges of employment

263.    Defendant Deloitte violated this section as set forth herein.

264.    Defendants intended, instead, to remove Plaintiff from his employment.

265.    Defendants discriminated against and retaliated against Plaintiff due to his age and for

         engaging in protected activity.

266.    Collective Defendants had no good faith business justification for any of the actions taken

         against Plaintiff as alleged herein.

267.    As a result of Collective Defendants actions, Plaintiff was extremely humiliated,

         degraded, victimized, embarrassed, and emotionally distressed.

268.    As a result of the acts and conduct complained of herein, Failure to Accommodate,

         Plaintiff has become disabled and unable to work loss of employment, financial hardship,

         loss of income, the loss of a salary, loss of bonus, loss of employment benefits, loss of

retirement benefits, stress, humiliation, pain and suffering, major inconvenience, other

compensation which such employment entails, special damages, and great inconvenience.

269.    Collective Defendant's conduct has been malicious, willful outrageous, and conducted

with full knowledge of the law.

270.    Plaintiff is entitled to the maximum damages allowable under this law, including

attorney's fees and costs

**SEVENTH CAUSE OF ACTION FOR *DISCRIMINATION***
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
***(Against Individual Defendants Bandes, Johnson, Jabal, Mudaliar, Vengo, Kelly and***
***Bradley)***

271.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this Complaint.

272.    The New York City Administrative Code §8-107(1) provides:

> It shall be an unlawful discriminatory practice: (A) For an employer or an
> or employee or agent thereof, because of the actual or perceived … age …
> of any person, to refuse to hire or employ or to bar or to discharge from
> employment such person or to discriminate against such person in
> compensation or in terms, conditions or privileges of employment.

273.    Individual Defendants Bandes, Johnson, Jabal, Mudaliar, Vengo, Kelly and Bradley

violated this section as set forth herein.

274.    Individual Defendants Bandes, Johnson, Jabal, Mudaliar, Vengo, Kelly and Bradley

personally participated in the actions at issue in this Complaint.

275.    At all times, Plaintiff suffered from a harassment and/or Deloitte Defendants perceived

that Plaintiff was suffering from a harassment.

276.   Defendants Johnson, Mudaliar, Vengo, Kelly, Brandley  took no action in response to Plaintiff's  complaints and allowed the retaliatory a discriminatory hostile work environment to continue against Plaintiff.

277.   At all times, Defendants Jabal, Johnson, Mudaliar, Vengo, Kelly, Bradley, were each acting within the scope of their employments and under the authorities given to them by employer Defendant Deloitte.

278.   But for Defendants Jabal, Johnson, Mudaliar, Kelly, Bradley management position, Defendants Jabal would not have been able to subject Plaintiff to the discriminatory and retaliatory treatment alleged herein.

279.   Defendants Jabal, Johnson, Mudaliar, Vengo, Kelly, Bradley had no good faith business justification for any of the actions taken against Plaintiff as alleged herein.

280.   As a result of the acts and conduct complained of herein, Failure to Accommodate, Plaintiff has become disabled and unable to work loss of employment, financial hardship, loss of income, the loss of a salary, loss of bonus, loss of employment benefits, loss of retirement benefits, stress, humiliation, pain and suffering, major inconvenience, other compensation which such employment entails, special damages, and great inconvenience.

281.   Defendants Bandes, Jabal, Johnson, Mudaliar, Vengo, Kelly, Bradley conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

282.   Plaintiff is entitled to the maximum damages allowable under this law, including attorney's fees and costs.

### EIGHTH CAUSE OF ACTION FOR *RETALIATION* UNDER THE NEW YORK CITY ADMINISTRATIVE CODE *(Against Collective Defendants)*

283.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs

of this Complaint.

284. The New York City Administrative Code § 8-107(7) provides that it shall be unlawful

discriminatory practice: "For an employer . . . to discriminate against any person because

such person has opposed any practices forbidden under this chapter."

285. Defendant Deloitte violated this section as set forth herein.

286. Plaintiff disclosed his age to Defendants and asked, specifically, for a

both in writing and also verbally

287. Plaintiff continued to complain (protected activity) to Deloitte, as well as to his

manager, Defendant Johnson, Vengo, Meghan, Bradley about the continued hostile work

environment and ongoing discriminatory actions against him.

288. In response, Dependents took no real action to alleviate Plaintiff's complaints and

instead began to accuse Plaintiff of violating the not getting along with her team - in an

effort to assure that Plaintiff would be wrongfully removed from his employment.

289. Defendants intended, instead, to remove Plaintiff from his employment.

290. Thereafter, Plaintiff was subjected to a hostile work environment permeated with

ridicule, insult, increased scrutiny, unfair meetings, unreasonable micromanaging, verbal

abuse, humiliating behavior, unreasonable critiques, bullying, intentional failure/refusal to

grant accommodations while continuing to unreasonably discipline Plaintiff.

291. Defendant's discriminated and retaliated against Plaintiff due to his age  and

for engaging in protected activity by wrongfully terminating Plaintiff by changing

Medical Leave of Absence to Personal leave of Absence without pay on May 1, 2023.

Ceasing all benefits and terminating by issuing (Personal Leave of Absence) PTO in Lum

Sum.

292.    As a result of Collective Defendants' actions, Plaintiff was extremely

humiliated, degraded, victimized, embarrassed, and emotionally distressed.

293.    As a result of the acts and conduct complained of herein, , Plaintiff has become disabled

and unable to work loss of employment, financial hardship, loss of income, the loss of a

salary, loss of bonus, loss of employment benefits, loss of retirement benefits, stress,

humiliation, pain and suffering, major inconvenience, other compensation which such

employment entails, special damages, and great inconvenience.

294.    Defendants Jabal, Johnson, Mudaliar, Vengo, Kelly, Bradley conduct was malicious,

willful, outrageous, and conducted with full knowledge of the law.

295.    Plaintiff is entitled to the maximum damages allowable under this law, including

attorney's fees and costs.

### NINTH CAUSE OF ACTION FOR *DISCRIMINATION* VICARIOUS LIABILITY UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### *(Against Defendant DELOITTE)*

296.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs

of this Complaint.

297.    NYCHRL § 8-107(13) is entitled "Employer liability for discriminatory conduct by an

employee, agent or independent contractor." It provides

> a. An employer shall be liable for an unlawful discriminatory
> practice based upon the conduct of an employee or agent which is
> in violation of any provision of this section other than subdivisions
> one and two of this section.
> b. An employer shall be liable for an unlawful discriminatory
> practice based upon the conduct of an employee or agent which is
> in violation of subdivision one or two of this section only where: (1)
> the employee or agent exercised managerial or supervisory
> responsibility; or (2) the employer knew of the employee's or
> agent's discriminatory conduct, and acquiesced in such conduct or
> failed to take immediate and appropriate corrective action; an
> employer shall be deemed to have knowledge of an employee's or
> agent's discriminatory conduct where that conduct was known by
> another employee or agent who exercised managerial or supervisory

responsibility; or (3) the employer should have known of the
employee's or agent's discriminatory conduct and failed to exercise
reasonable diligence to prevent such discriminatory conduct.
c. An employer shall be liable for an unlawful discriminatory
practice committed by a person employed as an independent
contractor, other than an agent of such employer, to carry out work
in furtherance of the employer's business enterprise only where such
discriminatory conduct was committed in the course of such
employment and the employer had actual knowledge of and acquiesced in such conduct.

298.    Defendant Deloitte violated this section as set forth herein and is vicarious liable for

the conduct of its managers and employees, Defendants Bandes, Jabal, Johnson, Mudaliar,

Vengo, Kelly, Bradley.

299.    At all times, Individual Defendants Bandes, Jabal, Johnson, Mudaliar,  Kelly, Bradley

were acting pursuant to their authorities and employments at Deloitte..

.300    But for Individual Defendants Bandes, Jabal, Johnson, Mudaliar,  Kelly, Bradley

positions, Defendant Bandes, Johnson, Jabal, Mudaliar would not have been able to

subject Plaintiff to the discriminatory and retaliatory treatment alleged above and

Defendants Meghan and Kelly  would not have allowed Defendant Bandes, Jabal,

Johnson, Mudaliar, Vengo to continue to abuse Plaintiff..

301.    At all times, Defendant Deloitte knew or should have known that its employee,

Defendant Jabal, Johnson, Mudaliar was violating Plaintiff's  rights and attempting to

unlawfully remove Plaintiff from employment.

302.    Defendant Deloitte, Kelly and Bradley took no action to prevent Defendant

Jabal, Johnson, and Mudaliar, but instead condoned, supported and failed to act in

response to Defendant Jabal, Johnson, Mudaliar's  known discriminatory acts against

Plaintiff.

303.    Collective Defendants had no good faith business justification for any of the

actions taken against Plaintiff as alleged herein.

304. As a result of Collective Defendants actions, Plaintiff was extremely

humiliated, degraded, victimized, embarrassed, and emotionally distressed.

305. As a result of the acts and conduct complained of herein, , Plaintiff has become disabled

and unable to work loss of employment, financial hardship, loss of income, the loss of a

salary, loss of bonus, loss of employment benefits, loss of retirement benefits, stress,

humiliation, pain and suffering, major inconvenience, other compensation which such

employment entails, special damages, and great inconvenience.

306. Collective Defendants conduct has been malicious, willful, outrageous, and

conducted with full knowledge of the law.

307. Plaintiff is entitled to the maximum damages allowable under this law, including

attorney's fees and costs.

## TENTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE AMERICANS WITH DISABILITIES ACT
### *(Against Defendant DELOITTE)*

308. Plaintiff repeats and realleges each and every allegation made in the above paragraphs

of this Complaint.

309. Section 12112 of the ADA, titled "Discrimination," provides:

"(a) General rule. - No covered entity shall discriminate against a
qualified individual on the basis of disability in regard to job
application procedures, the hiring, advancement, or discharge of
employees, employee compensation, job training, and other terms,
      conditions, and privileges of employment."

310. Defendant Deloitte violated this section as set forth herein.

311. At all times, Plaintiff suffered from a disability and/or Deloitte Defendants

perceived that Plaintiff was suffering from a disability.

312. Plaintiff disclosed her disability to Defendants and asked, specifically, for a

"reasonable accommodation" both in writing and also verbally.

313.   Plaintiff clearly sought to continue to work with reasonable accommodations.

314.   Defendants could have easily granted Plaintiff accommodations, could have explained Plaintiff's conditions and needs to his coworkers, could have explained the ADA and its obligations to his coworkers and/or could have improved Plaintiff's work environment.

315.   However, Defendants intentionally refused/failed to do so.

316.   Defendant's failure/refusal to grant Plaintiff reasonable accommodations was in furtherance of their attempt to remove Plaintiff from his employment, for discriminatory and retaliatory reasons and continue to assigned failing projects.

317.   Defendants did not engage in any good faith interactive process for Plaintiff, nor did they consider any aspect of Plaintiff recommendations as to what accommodations would allow him to do her job.

318.   In the alternative, Defendants never attempted to determine if there were ways to accommodate Plaintiff and/or to help Plaintiff interact better with her team.

319.   Defendants intended, instead, to subject Plaintiff to a hostile work environment and to remove Plaintiff from his employment.

320.   Defendants discriminated and retaliated against Plaintiff due to his disability and for engaging in protected activity.

321.   Collective Defendants had no good faith business justification for any of the actions taken against Plaintiff as alleged herein.

322.   As a result of Collective Defendants' actions, Plaintiff was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

323.   As a result of the acts and conduct complained of herein, Plaintiff suffered, and

continues to suffer, stress, ongoing humiliation, intimidation, ridicule, fear, anxiety,

 loss of income, the loss of a salary, special damages, loss of employment, loss of benefits,

and loss of other compensation which such employment entails, and Plaintiff also suffered

future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of

life, and other non-pecuniary losses.

324.    Collective Defendants' conduct has been malicious, willful, outrageous, and

conducted with full knowledge of the law.

325.    Plaintiff is entitled to the maximum damages allowable under this law, including

attorney's fees and costs.

### ELEVENTH CAUSE OF ACTION FOR RETALIATION
### UNDER THE AMERICANS WITH DISABILITIES ACT
### *(Against Defendant DELOITTE)*

326.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs
of this Complaint.

327.    The ADA prohibits retaliation, interference, coercion, or intimidation.

328.    Section 12203 of the ADA provides:

> a) Retaliation. No person shall discriminate against any
> individual because such individual has opposed any act or practice
> made unlawful by this chapter or because such individual made a
> charge, testified, assisted, or participated in any manner in an investigation, proceeding, or
> hearing under this chapter.
> b) Interference, coercion, or intimidation. It shall be unlawful
> to coerce, intimidate, threaten, or interfere with any individual in the
> exercise or enjoyment of, or on account of his or her having
> exercised or enjoyed, or on account of his or her having aided or
> encouraged any other individual in the exercise or enjoyment of, any
> right granted or protected by this chapter.

329.    Defendant Deloitte violated this section as set forth herein.

330.    At all times, Plaintiff suffered from a disability and/or Deloitte Defendants perceived that

Plaintiff was suffering from a disability.

331.    Plaintiff disclosed her disability to Defendants and asked, specifically, for a

"*reasonable accommodation*" both in writing and also verbally.

332.    Plaintiff clearly sought to continue to work with reasonable accommodations.

333.    Plaintiff continued to complain (protected activity) to Deloitte, Defendant Bradley and

Meghan as well as to his Team lead/manager, Defendant Commons, Kocsi ,Johnson,

Hodges about the continued hostile work environment and ongoing discriminatory actions

against him.

334.    In response, Defendants took no real action to alleviate Plaintiff's complaints and instead

began to accuse Plaintiff not getting along with his team - in an effort to assure that

Plaintiff would be wrongfully removed from his employment by ceasing his benefits and

changing his Medical Leave to Personal Leave with pay on May 1, 2023

335,    Plaintiff went into depression due to Hostile environment.

336.    Defendants' failure/refusal to grant Plaintiff reasonable accommodations was in

furtherance of their attempt to retaliate against and remove Plaintiff from his

employment, for discriminatory reasons.

337.    Defendants intended, instead, to subject Plaintiff to a hostile work environment

and to remove Plaintiff from him employment.

338.    Thereafter, Plaintiff was subjected to a hostile work environment that was permeated

with ridicule, insult, increased scrutiny, unfair meetings, unreasonable micromanaging,

verbal abuse, humiliating behavior, unreasonable critiques, bullying, intentional

failure/refusal to grant accommodations.

339.    Defendants discriminated and retaliated against Plaintiff due to his disability and
for engaging in protected activity by wrongfully terminating Plaintiff.

340.    Collective Defendants had no good faith business justification for any of the

actions taken against Plaintiff as alleged herein.

341.    As a result of Collective Defendants actions, Plaintiff was extremely

humiliated, degraded, victimized, embarrassed, and emotionally distressed.

342.    As a result of the acts and conduct complained of herein, Plaintiff suffered, and

continues to suffer, stress, ongoing humiliation, intimidation, ridicule, fear, anxiety,

loss of income, the loss of a salary, special damages, loss of employment, loss of benefits,

and loss of other compensation which such employment entails, and Plaintiff also suffered

future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of

life, and other non-pecuniary losses.

343.    Collective Defendants' conduct has been malicious, willful, outrageous, and

conducted with full knowledge of the law.

344.    Plaintiff is entitled to the maximum damages allowable under this law, including

attorney's fees and costs.

### TWELWTH CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK STATE EXECUTIVE LAW
### *(Against COLLECTIVE DEFENDANTS)*

345.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs

of this Complaint.

346.    New York State Executive Law § 296(7) provides that it shall be an unlawful

discriminatory practice: "*For any person engaged in any activity to which this section*

*applies to retaliate or discriminate against any person because he has opposed any*

*practices forbidden under this article*."

347.    Defendant Deloitte violated this section as set forth herein.

348.    Individual Defendants are equally liable for **aiding and abetting** the retaliatory

conduct of their employer, Deloitte, against Plaintiff.

349. At all times, Plaintiff suffered from a disability and/or Deloitte Defendants' perceived that Plaintiff was suffering from a disability.

350. Plaintiff disclosed her disability to Defendants and asked, specifically, for a "*reasonable accommodation*" both in writing and also verbally.

351. Plaintiff clearly sought to continue to work with reasonable accommodations.

352. Plaintiff continued to complain (protected activity) to Deloitte, Defendant Kelly and Brandley as well as to his manager/Team lead, Defendant Bandes, Kocsi, Johnson, Mudaliar, Hodges about the continued hostile work environment and ongoing discriminatory actions against him.

353. In response, Defendant took no real action to alleviate Plaintiff's complaints and instead began to accuse Plaintiff of violating the dress code policy does d not getting along with his team - in an effort to assure that Plaintiff would be wrongfully removed from his employment.

354. Defendants' failure/refusal to grant Plaintiff reasonable accommodations was in furtherance of their attempt to retaliate against and remove Plaintiff from his employment, for discriminatory reasons.

355. Defendants did not engage in any good faith interactive process for Plaintiff, nor did they consider any aspect of Plaintiff recommendations as to what accommodations would allow him to do his job.

356. Defendants intended, instead, to subject Plaintiff to a hostile work environment and to remove Plaintiff from his employment.

357. Thereafter, Plaintiff was subjected to a hostile work environment permeated with ridicule, insult, increased scrutiny, unfair meetings, unreasonable micromanaging, verbal

abuse, humiliating behavior, unreasonable critiques, bullying, intentional failure/refusal to

grant accommodations while continuing to unreasonably discipline Plaintiff.

358.     Defendants discriminated and retaliated against Plaintiff due to his disability and

for engaging in protected activity by wrongfully terminating Plaintiff.

359.     Collectives Defendants had no good faith business justification for any of the actions

taken against Plaintiff as alleged herein.

360.     As a result of Collectives Defendants actions, Plaintiff was extremely

humiliated, degraded, victimized, embarrassed, and emotionally distressed.

361.     As a result of the acts and conduct complained of herein, Plaintiff suffered, and

continues to suffer, stress, ongoing humiliation, intimidation, ridicule, fear, anxiety,

, loss of income, the loss of a salary, special damages, loss of employment, loss of

benefits, and loss of other compensation which such employment entails, and Plaintiff

also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of

enjoyment of life, and other non-pecuniary losses.

362.     Collective Defendants conduct has been malicious, willful, outrageous, and

conducted with full knowledge of the law.

363.     Plaintiff is entitled to the maximum damages allowable under this law, including

attorney's fees and costs.

### THIRTEEN CAUSES OF ACTION FOR RETALIATION
### UNDER NEW YORK STATE EXECUTIVE LAW
#### *(Against Collective Defendants)*

364.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs

of this Complaint.

365.     New York State Executive Law § 296(7) provides that it shall be an unlawful

discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

366.    Defendant Deloitte violated this section as set forth herein.

367,    Individual Defendants are equally liable for **aiding and abetting** the retaliatory conduct of their employer, Deloitte, against Plaintiff.

368.    At all times, Plaintiff suffered from a disability and/or Deloitte Defendants perceived that Plaintiff was suffering from a disability.

369.    Plaintiff disclosed his disability to Defendants and asked, specifically, for a "*reasonable accommodation*" both in writing and also verbally.

370.    Plaintiff clearly sought to continue to work with reasonable accommodations.

371.    Plaintiff continued to complain (protected activity) to Deloitte, Defendant Megan and Bradley, as well as to his manager/Lead , Defendant Johnson and Kocsi about the continued hostile work environment and ongoing discriminatory actions against him.

372.    In response, Defendant took no real action to alleviate Plaintiff's complaints and instead began to accuse Plaintiff not getting along with team - in an effort to assure that Plaintiff would be wrongfully removed from his employment.

373.    Defendants' failure/refusal to grant Plaintiff reasonable accommodations was in furtherance of their attempt to retaliate against and remove Plaintiff from her employment, for discriminatory reasons.

374.    Defendants did not engage in any good faith interactive process for Plaintiff, nor did they consider any aspect of Plaintiff recommendations as to what accommodations would allow him to do his job.

375.    Defendants intended, instead, to subject Plaintiff to a hostile work environment
        and to remove Plaintiff from his employment.

376.    Thereafter, Plaintiff was subjected to a hostile work environment permeated with
        ridicule, insult, increased scrutiny, unfair meetings, unreasonable micromanaging, verbal
        abuse, humiliating behavior, unreasonable critiques, bullying, intentional failure/refusal to
        grant accommodations.

377.    Defendant discriminated and retaliated against Plaintiff due to his disability and
        for engaging in protected activity by wrongfully terminating Plaintiff.

378.    Collective Defendants had no good faith business justification for any of the actions taken
        against Plaintiff as alleged herein.

379.    As a result of Collective Defendants actions, Plaintiff was extremely
        humiliated, degraded, victimized, embarrassed, and emotionally distressed.

380.    As a result of the acts and conduct complained of herein, Plaintiff suffered, and
        continues to suffer, stress, ongoing humiliation, intimidation, ridicule, fear, anxiety,
        loss of income, the loss of a salary, unequal pay, special damages, loss of employment,
        loss of benefits, and loss of other compensation which such employment entails, and
        Plaintiff has also suffered future pecuniary losses, emotional pain, suffering,
        inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff became
        disabled because of action of Defendants Deloitte, Commons, Johnson, Kocsi, Meghan,
        Bradley and Hodges's

381.    Collective Defendants conduct has been malicious, willful, outrageous, and
        conducted with full knowledge of the law.

382.    Plaintiff is entitled to the maximum damages allowable under this law, including

attorney's fees and costs.

## FOURTEN CAUSES OF ACTION FOR RETALIATION
## UNDER NEW YORK STATE EXECUTIVE LAW
*(Against Individual Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges)*

383. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

384. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "*For any person to **aid, abet,** incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so.*"

385. Individual Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges violated this section as set forth herein.

386. Individual Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges personally participated in the actions at issue in this Complaint.

387. At all times, Plaintiff suffered from a disability and/or Deloitte Defendants perceived that Plaintiff was suffering from a disability.

388. Plaintiff could have worked with reasonable accommodations.

389. Plaintiff sought to continue to work with reasonable accommodations.

390. Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges could have easily granted Plaintiff accommodations and could have allowed Plaintiff to try to work therewith. However, Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges intentionally refused/failed to do so.

391. Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges's failure/refusal to grant Plaintiff reasonable accommodations were in furtherance of Deloitte's attempt to remove Plaintiff from his employment, for discriminatory reasons.

392.   Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges's  acting on behalf
of Deloitte, did not engage in any good faith interactive process for Plaintiff, nor did they
consider any aspect of Plaintiff recommendations.

393.   Defendant Commons, misrepresented in the interview that in Deloitte work week is 40
hours. Plaintiff would not have joined if Deloitte did not misrepresent and would not
become permanent   disabled.

394.   In the alternative, Defendants Johnson, Kocsi, Meghan, and Bradley never attempted to
determine if there were alternate ways than those suggested by Plaintiff, to determine if
Plaintiff could acclimate himself to his environment and/or to accommodate Plaintiff.

395.   Defendant Hodges, misrepresented and lied and changed Plaintiff medical leave of
Absence to personal Leave of Absence on May 1, 2023, so Plaintiff can be terminated
while ceasing all the benefits starting the Termination processes by paying accrued PTO.

396.   Defendants Johnson, Kocsi, Meghan, and Bradley knew that Plaintiff's disabilities were
causing issues between Plaintiff and Defendant Jabal, but took no action to abate the
situation, to inform Plaintiff's about their obligations to accommodate
Plaintiff under the ADA or to determine if Plaintiff could be accommodated in any
way.

397.   Defendants Johnson, Kocsi, then discriminated and retaliated against Plaintiff due
to his (actual or perceived) disability and for engaging in protected activity.

398.   Plaintiff complained to Defendant Megan and Bradley on multiple occasions to no avail.

399.   Defendant Meghan and Bradley took no action in response to Plaintiff's complaints and
allowed the retaliatory a discriminatory hostile work environment to continue against
Plaintiff.

400.   At all times, Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges's were each acting within the scope of their employments and under the authorities given to them by their employer Defendant Deloitte.

401.   But for Defendants Johnson, Kocsi management position, Defendants Johnson, Kocsi would not have been able to subject Plaintiff to the discriminatory and retaliatory treatment alleged herein.

402.   Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges's had no good faith business justification for any of the actions taken against Plaintiff as alleged herein.

403.   As a result of Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges's actions, Plaintiff was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

404.   As a result of the acts and conduct complained of herein, Plaintiff suffered, and continues to suffer, stress, ongoing humiliation, intimidation, ridicule, fear, anxiety, loss of income, the loss of a salary, unequal pay, special damages, loss of employment, loss of benefits, and loss of other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff became disabled because of action of Defendants Deloitte, Commons, Johnson, Kocsi, Meghan, Bradley and Hodges's

405.   Defendants Deloitte, Commons, Johnson, Kocsi, Meghan, Bradley and Hodges's conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

406.   Plaintiff is entitled to the maximum damages allowable under this law, including attorney's fees and costs.

## FIFTEEN CAUSE OF ACTION FOR *DISCRIMINATION*
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### *(Against Collective Defendants)*

407.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs

of this Complaint.

408.   The New York City Administrative Code §8-107(1) provides:

> It shall be an unlawful discriminatory practice: (a) For an employer
> or an employee or agent thereof, because of the actual or perceived
> . . . disability . . . of any person, to refuse to hire or employ or to bar
> or to discharge from employment such person or to discriminate
> against such person in compensation or in terms, conditions or
> privileges of employment.

409.   Defendant Deloitte violated this section as set forth herein.

410.   At all times, Plaintiff suffered from a disability and/or Deloitte Defendants

perceived that Plaintiff was suffering from a disability.

411.   Plaintiff disclosed her disability to Defendant and asked, specifically, for a

"*reasonable accommodation*" both in writing and also verbally.

412.   Plaintiff clearly sought to continue to work with reasonable accommodations.

413.   Defendants could have easily granted Plaintiff accommodations, could have

explained Plaintiff's conditions and needs to his coworkers, could have explained the

ADA and its obligations to his coworkers and/or could have improved Plaintiff's work

environment.

414.   However, Defendants intentionally refused/failed to do so.

415.   Defendants' failure/refusal to grant Plaintiff reasonable accommodations was in

furtherance of their attempt to remove Plaintiff from his  employment, for

discriminatory reasons.

416.   Defendants did not engage in any good faith interactive process for Plaintiff, nor

did they consider any aspect of Plaintiff recommendations as to what accommodations would allow him to do her job.

417.   In the alternative, Defendants never attempted to determine if there were ways to accommodate Plaintiff and/or to help Plaintiff interact better with her team.

418.   Defendants intended, instead, to remove Plaintiff from her employment.

419.   Defendants discriminated and retaliated against Plaintiff due to his disability and for engaging in protected activity.

420.   Collective Defendends had no good faith business justification for any of the actions taken against Plaintiff as alleged herein.

421.   As a result of Collective Defendants actions, Plaintiff was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

422.   As a result of the acts and conduct complained of herein, Plaintiff suffered, and continues to suffer, stress, ongoing humiliation, intimidation, ridicule, fear, anxiety, loss of income, the loss of a salary, unequal pay, special damages, loss of employment, loss of benefits, and loss of other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff became disabled because of action of Defendants Deloitte ,Commons, Johnson, Kocsi, Meghan, Bradley and Hodges's

423.   Defendants Deloitte, Commons, Johnson, Kocsi, Meghan, Bradley and Hodges's conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

424.   Plaintiff is entitled to the maximum damages allowable under this law, including attorney's fees and costs.

## SIXTEEN CAUSES OF ACTION FOR *DISCRIMINATION* UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### *(Against Individual Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges))*

425.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

426.    The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

427.    Individual Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges violated this section as set forth herein.

428.    Individual Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges personally participated in the actions at issue in this Complaint.

429.    At all times, Plaintiff suffered from a disability and/or Deloitte Defendants perceived that Plaintiff was suffering from a disability.

430.    Plaintiff could have worked with reasonable accommodations.

431.    Plaintiff sought to continue to work with reasonable accommodations.

432.    Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges could have easily granted Plaintiff accommodations and could have allowed Plaintiff to try to work therewith. However, Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges intentionally refused/failed to do so.

433.    Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges's failure/refusal to grant Plaintiff reasonable accommodations were in furtherance of Deloitte's attempt to remove Plaintiff from his employment, for discriminatory reasons.

434.    Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges's  acting on behalf
of Deloitte, did not engage in any good faith interactive process for Plaintiff, nor did they
consider any aspect of Plaintiff recommendations.

435.    Defendant Commons, misrepresented in the interview that in Deloitte work week is 40
hours. Plaintiff would not have joined if Deloitte did not misrepresent and would not
become permanent   disabled.

436.    In the alternative, Defendants Johnson, Kocsi, Meghan, and Bradley never attempted to
determine if there were alternate ways than those suggested by Plaintiff, to determine if
Plaintiff could acclimate himself to his environment and/or to accommodate Plaintiff.

437.    Defendant Hodges, misrepresented and lied and changed Plaintiff medical leave of
Absence to personal Leave of Absence on May 1, 2023, so Plaintiff can be terminated
while ceasing all the benefits starting the Termination processes by paying accrued PTO.

438.    Defendants Johnson, Kocsi, Meghan, and Bradley knew that Plaintiff's disabilities were
causing issues between Plaintiff and Defendant Jabal, but took no action to abate the
situation, to inform Plaintiff's about their obligations to accommodate
Plaintiff under the ADA or to determine if Plaintiff could be accommodated in any
way.

439.    Defendants Johnson, Kocsi, then discriminated and retaliated against Plaintiff due
to his (actual or perceived) disability and for engaging in protected activity.

440.    Plaintiff complained to Defendant Megan and Bradley on multiple occasions to no avail.

441.    Defendant Meghan and Bradley took no action in response to Plaintiff's complaints and
allowed the retaliatory a discriminatory hostile work environment to continue against
Plaintiff.

442.    At all times, Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges's were each acting within the scope of their employments and under the authorities given to them by their employer Defendant Deloitte.

443.    But for Defendants Johnson, Kocsi management position, Defendants Johnson, Kocsi would not have been able to subject Plaintiff to the discriminatory and retaliatory treatment alleged herein.

444.    Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges's had no good faith business justification for any of the actions taken against Plaintiff as alleged herein.

445.    As a result of Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges's actions, Plaintiff was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

446.    As a result of the acts and conduct complained of herein, Plaintiff suffered, and continues to suffer, stress, ongoing humiliation, intimidation, ridicule, fear, anxiety, loss of income, the loss of a salary, unequal pay, special damages, loss of employment, loss of benefits, and loss of other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff became disabled because of action of Defendants Deloitte ,Commons, Johnson, Kocsi, Meghan, Bradley and Hodges's

447.    Defendants Deloitte, Commons, Johnson, Kocsi, Meghan, Bradley and Hodges's conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

448.    Plaintiff is entitled to the maximum damages allowable under this law, including attorney's fees and costs.

## SEVENTEEN CAUSES OF ACTION FOR *RETALIATION*
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### *(Against Collective Defendants)*

449.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

450.     The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter."

451.     Defendant Deloitte violated this section as set forth herein.

452.     Individual Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges violated this section as set forth herein.

453.     Individual Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges personally participated in the actions at issue in this Complaint.

454.     At all times, Plaintiff suffered from a disability and/or Deloitte Defendants perceived that Plaintiff was suffering from a disability.

455.     Plaintiff could have worked with reasonable accommodations.

456.     Plaintiff sought to continue to work with reasonable accommodations.

457.     Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges could have easily granted Plaintiff accommodations and could have allowed Plaintiff to try to work therewith. However, Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges intentionally refused/failed to do so.

458.    Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges's failure/refusal to grant Plaintiff reasonable accommodations were in furtherance of Deloitte's attempt to remove Plaintiff from his employment, for discriminatory reasons.

459.    Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges's acting on behalf of Deloitte, did not engage in any good faith interactive process for Plaintiff, nor did they consider any aspect of Plaintiff recommendations.

460.    Defendant Commons, misrepresented in the interview that in Deloitte work week is 40 hours. Plaintiff would not have joined if Deloitte did not misrepresent and would not become permanent   disabled.

461.    In the alternative, Defendants Johnson, Kocsi, Meghan, and Bradley never attempted to determine if there were alternate ways than those suggested by Plaintiff, to determine if Plaintiff could acclimate himself to his environment and/or to accommodate Plaintiff.

462.    Defendant Hodges, misrepresented and lied and changed Plaintiff medical leave of Absence to personal Leave of Absence on May 1, 2023, so Plaintiff can be terminated while ceasing all the benefits starting the Termination processes by paying accrued PTO.

463.    Defendants Johnson, Kocsi, Meghan, and Bradley knew that Plaintiff's disabilities were causing issues between Plaintiff and Defendant Jabal, but took no action to abate the situation, to inform Plaintiff's about their obligations to accommodate Plaintiff under the ADA or to determine if Plaintiff could be accommodated in any way.

464.    Defendants Johnson, Kocsi, then discriminated and retaliated against Plaintiff due to his (actual or perceived) disability and for engaging in protected activity.

465.    Plaintiff complained to Defendant Megan and Bradley on multiple occasions to no avail.

466.   Defendant Meghan and Bradley took no action in response to Plaintiff's complaints and allowed the retaliatory a discriminatory hostile work environment to continue against Plaintiff.

467.   At all times, Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges's were each acting within the scope of their employments and under the authorities given to them by their employer Defendant Deloitte.

468.   But for Defendants Johnson, Kocsi management position, Defendants Johnson, Kocsi would not have been able to subject Plaintiff to the discriminatory and retaliatory treatment alleged herein.

469.   Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges's had no good faith business justification for any of the actions taken against Plaintiff as alleged herein.

470.   As a result of Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges's actions, Plaintiff was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

471.   As a result of the acts and conduct complained of herein, Plaintiff suffered, and continues to suffer, stress, ongoing humiliation, intimidation, ridicule, fear, anxiety, loss of income, the loss of a salary, unequal pay, special damages, loss of employment, loss of benefits, and loss of other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff became disabled because of action of Defendants Deloitte, Commons, Johnson, Kocsi, Meghan, Bradley and Hodges's

472.     Defendants Deloitte, Commons, Johnson, Kocsi, Meghan, Bradley and Hodges's conduct

was malicious, willful, outrageous, and conducted with full knowledge of the law.

473.     Plaintiff is entitled to the maximum damages allowable under this law, including

attorney's fees and costs.

## EIGHTEEN CAUSES OF ACTION FOR *DISCRIMINATION* VICARIOUS LIABILITY UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### *(Against Defendant DELOITTE)*

474.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs

of this Complaint.

475.     NYCHRL § 8-107(13) is entitled "Employer liability for discriminatory conduct by an employee, agent or independent contractor." It provides

a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.
b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.
c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

476.     Defendant Deloitte violated this section as set forth herein and is vicarious liable for

the conduct of its managers and employees, Defendants Commons, Johnson, Kocsi,

Meghan, Bradley and Hodges

477.    At all times, Individual Defendants Commons, Johnson, Kocsi, Meghan, Bradley and

Hodges were acting pursuant to their authorities and employments at Deloitte.

478.    But for Individual Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges

positions, Defendant Commons, Johnson, Kocsi, Hodges  would not have been able to

subject Plaintiff to the discriminatory and retaliatory treatment alleged above and

Defendant  Kelly and Brandley  would not have allowed Defendant  Commons, Johnson,

Kocsi and Hodges to continue to abuse Plaintiff.

479.    At all times, Defendant Deloitte knew or should have known that its employee,

Defendants Commons, Johnson, Kocsi, Meghan, Bradley and Hodges were violating

Plaintiff's rights and attempting to unlawfully remove Plaintiff from employment.

480.    Defendant Deloitte, Kelly and Brandley took no action to prevent Defendant

Commons, Johnson, Kocsi, and Hodges, but instead condoned, supported and failed to act

in response Defendant Commons, Johnson, Kocsi, and Hodges known discriminatory acts

against Plaintiff.

481.    Collective Defendants had no good faith business justification for any of the

actions taken against Plaintiff as alleged herein.

482.    As a result of Collective Defendants actions, Plaintiff was extremely

humiliated, degraded, victimized, embarrassed, and emotionally distressed.

483.    As a result of the acts and conduct complained of herein, Plaintiff suffered, and

continues to suffer, stress, ongoing humiliation, intimidation, ridicule, fear, anxiety,

 loss of income, the loss of a salary, unequal pay, special damages, loss of employment,

loss of benefits, and loss of other compensation which such employment entails, and

Plaintiff has also suffered future pecuniary losses, emotional pain, suffering,

inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff became

disabled because of action of Defendants Deloitte, Commons, Johnson, Kocsi, Meghan,

Bradley and Hodges's

484    Collective Defendants conduct has been malicious, willful, outrageous, and

conducted with full knowledge of the law.

485.   Plaintiff is entitled to the maximum damages allowable under this law, including

attorney's fees and costs.

**NINETEETH CLAIM FOR RELIEF**
**Claim for Benefits Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B),**
**against Administrator, Deloitte LLP Group Insurance Plan, Retirement Appeal**
**Committee, Defined Contribution Profit Sharing of Deloitte LLP.;**
**Retirement Appeal Committee, Defined Benefits Pension Plans of Deloitte LLP]**

486.   Plaintiff incorporates Paragraphs 164 through 189 as though fully set forth here.

487.   Plaintiff has exhausted her administrative remedies

488.   ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to

bring a civil action to recover benefits due to her under the terms of a plan, to enforce her

rights under the terms of a plan, and/or to clarify her rights to future benefits under the

terms of a plan.

489.   For claims with long-term disability plans after January 1, 2018 the Department of Labor

(DOL) has released new regulations that impact the traditional definition of "exhaustion

of administrative remedies "29 C.F.R §2560.503.-1 provides PLAINTIFF may proceed to

file a lawsuit in federal court challenging the denial long-term disability benefits when

their claims are "deemed denied.

490.   In particular, Section 3.4 of the Plan provides "If a Participant's coverage under a Covered

Welfare Plan that is a group health plan (.e.g., medical, or dental coverage…) ceases

because of certain "qualifying events" specified in COBRA (such as termination,

reduction in hours,…) then participant may have the right to purchase continuation

coverage for a temporary of time."

491.    None of the qualifying event occur. Deloitte violation occurred to cease the benefits, and

cause Termination.  "Per our conversation, your long term disability was termed on

5/12/23 and a **personal leave of absence with no pay** was entered on 5/1/23 to start on

5/15/23 by R. Hodges."

492.    Defendants have violated, and continue to violate, the terms of the Plan, governing law

regarding ERISA's mandatory spousal benefits, and Mr. Gilani's rights

under the Plan and the governing law.

493.    By denying and violating the Plan, and by related acts and omissions, including but not

limited to refusing to apply the law in effect at the time of Mr. Gilani claim.

### TWEENTEH CLAIM FOR RELIEF
**[Claim for Breach of Fiduciary Duty Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), against Defendant Deloitte and Administrator, Deloitte LLP Group Insurance Plan, Retirement Appeal Committee, Defined Contribution Profit Sharing of Deloitte LLP.; Retirement Appeal Committee, Defined Benefits Pension Plans of Deloitte LLP for Failure to Administer Plan in Accordance with Applicable Law]**

494.    Plaintiff incorporates Paragraphs 164 through 189 as though fully set forth here.

495.    Plaintiff has exhausted her administrative remedies

496.    ERISA § 404(a), 29 U.S.C. § 1004(a), requires that a fiduciary discharge its duties

with respect to a plan solely in the interest of the participants and beneficiaries, for the

exclusive purpose of providing benefits to participants and fiduciaries and defraying

reasonable expenses of administering the plan, and in accordance with the documents and

instruments governing the plan insofar as such documents and instruments are consistent with other provisions of ERISA.

497.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary of a plan to file suit to "enjoin any act or practice" that violates Title I of ERISA or the terms of a plan, and/or to obtain "other appropriate relief" to redress such violations. ERISA § 205(a)(2), 29 U.S.C. § 1055(a)(2), is part of Title I of ERISA

498.     By engaging in the acts and omissions described above, including but not limited to interpreting the Plan in a manner contrary to applicable federal law, refusing to apply the law in effect at the time of Mr. Gilani  claim, and refusing to provide Mr. Gilani  a benefit mandated by ERISA, Defendant Deloitte and Defendant Administrator, Deloitte LLP Group Insurance Plan have breached their fiduciary duty to Mr. Gilani and have violated Title I of ERISA.

499.     As a result of Defendant Deloitte and Defendant Deloitte and Defendant Administrator, Deloitte LLP Group Insurance Plan breaches of fiduciary duty and violations of Title I of ERISA, Plaintiff has been harmed.

**TWENTY-ONE CLAIMS FOR RELIEF (IN THE ALTERNATIVE)**
**[Claim for Breach of Fiduciary Duty Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), against Defendant Deloitte LLP., and Administrator, Deloitte LLP Group Insurance Plan, Retirement Appeal Committee, Defined Contribution Profit Sharing of Deloitte LLP.; Retirement Appeal Committee, Defined Benefits Pension Plans of Deloitte LLP for Failure to Inform and/or Misleading Communications]**

500.     Plaintiff incorporates Paragraphs 164 through 189 as though fully set forth here.

501     An ERISA fiduciary is obligated to disclose material information to participants and beneficiaries, and has a duty not to mislead a plan participant and/or beneficiary.

502.     As a result of Defendant FedEx's breaches of fiduciary duty, Plaintiff has been harmed.

503.   Plaintiff is entitled to Benefits which they were ceased in violation of ERISA

## **PRAYER FOR RELIEF**

504.   WHEREFORE, Plaintiff prays that the Court grant the following relief:

505.   <u>As to the Ninetieth Claim for Relief:</u>

 A. Declare that Defendants have violated the terms of the Plan;

B. Order Defendants to reinstate Plaintiff's Benefits including medical Health and

other

beginning on May 16, 2023

C.  Reinstate Service Defined benefits as of November 28, 22

D. Reinstate Pension Plan Contribution as of June 28, 2023

E.  Revert Violation and Reinstate Medical Leave of Absence as of 5/12/23

506.   <u>As to the Twenty and Twenty-first Claim for Relief:</u>

A.  Declare that Deloitte LLP., and Administrator, Deloitte LLP Group Insurance

Plan, Retirement Appeal Committee, Defined Contribution Profit Sharing of

Deloitte LLP.; Retirement Appeal Committee, Defined Benefits Pension Plans of

Deloitte LLP breached their fiduciary duty to Plaintiff;

B.  Declare Plaintiff has a right to reinstate benefits ceased

C.  Order that Defendant pay to Plaintiff amounts to make Plaintiff whole for the

harm he  has suffered due to Deloitte LLP., and Administrator, Deloitte LLP

Group Insurance Plan, Retirement Appeal Committee, Defined Contribution

Profit Sharing of Deloitte LLP.; Retirement Appeal Committee, Defined Benefits

Pension Plans of Deloitte LLP's breaches by providing other appropriate

D.  Provide such other relief as the Court deems equitable and just.

## **PUNITIVE DAMAGES ARE APPROPRIATE HEREIN**

507.   Collective Defendants' conduct was willful, malicious, intentional and intended to

humiliate and abuse Plaintiff due to his disabilities. As such Punitive damages are

appropriate against Defendants, collectively and individually, for their actions as

alleged above.

## **JURY DEMAND**

508.   Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, PLAINTIFF respectfully requests a judgment against Defendants:

A.  Declaring that Defendants engaged in unlawful employment practices prohibited by the

ADEA, ADA, NYSHRL, and NYCHRL, in that Defendants discriminated against

Plaintiff on the basis of his age and actual and/or perceived disability; retaliated against

Plaintiff for engaging in protected activity and unlawfully terminated Plaintiff;

B.  Awarding damages to PLAINTIFF for all lost wages and benefits resulting from

Collective Defendants' unlawful discrimination and conduct and to otherwise make his

whole for any losses suffered because of such unlawful employment practices;

C.  Awarding Plaintiff compensatory damages for mental and emotional injury, distress,

pain, suffering, and injury to his reputation in an amount to be proven;

D.  Awarding Plaintiff punitive damages; Awarding PLAINTIFF attorneys' fees, costs, and

expenses incurred in the prosecution of the action; and

E.   Awarding PLAINTIFF such other and further relief as the Court may deem equitable,

just, and proper to remedy Collective Defendants' unlawful employment practices.


Dated: Armonk, New York
          June 6, 2023

                                                    By: _____ /s/ *Asad Gilani*___
                                                          Asad Gilani, Pro Se
                                                          661 Bedford Road
                                                          Armonk, NY 10504
                                                          (914) 224-8073
                                                          Asad.s.gilani@gmail.com

# EXHIBIT A

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  **Mr. Asad Gilani**<br>**661 Bedford Road**<br>**ARMONK, NY 10504** | From:  **New York District Office**<br>**33 Whitehall St, 5th Floor**<br>**New York, NY 10004** |

| EEOC Charge No.<br>**520-2023-00001** | EEOC Representative<br><br>**MICHAEL WOO,**<br>**Investigator** | Telephone No.<br>**929-506-5348** |
|---|---|---|

*(See also the additional information enclosed with this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court <u>**WITHIN 90 DAYS**</u> **of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

> Less than 180 days have elapsed since the filing date. I certify that the Commission s processing of this charge will not be completed within 180 days from the filing date.

> The EEOC is terminating its processing of this charge.

*Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> \*of your receipt of this Notice.\* Otherwise, your right to sue based on the above-numbered charge will be lost.*

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.*

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By: Timothy Riera
03/13/2023

Enclosures(s)

**Timothy Riera**
**Acting District Director**

cc:  **Susan Pugatch**
**Deloitte LLP**
**1221 AVENUE OF THE AMERICAS FL 39**
**New York, NY 10020**
**Saima Sheikh**
**Deloitte LLP**
**1221 AVENUE OF THE AMERICAS FL 39**
**New York, NY 10020**



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### New York District Office

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(212) 336-3620
TTY (212) 336-3622
General FAX (212) 336-3625

**BY EMAIL**

Asad Gilani
661 Bedford Road
Armonk, NY 10504
**Asad.s.gilani@gmail.com**

RE:                          **Asad Gilani v. Deloitte**
EEOC Charge No.:              **520-2023-00001C**

Dear: Asad Gilani:

This office is in receipt of your client's request for a *Notice of Right to Sue* on the above
referenced charge.

The Commission has reviewed all the circumstances of this case to ascertain whether we
will be able to complete our administrative process within 180 days. We have
concluded that we will not be able to complete our administrative process within the
allotted 180 days since your client's charge was filed, and we are issuing the requested
*Notice of Right to Sue.*

Sincerely,

On Behalf of the Commission:

**Michael** Digitally signed by
Michael Woo
**Woo** Date: 2023.03.13
07:55:53 -04'00'     FOR                    __03-13-2023_____
Timothy Riera, Acting *District Director- NYDO*                Date

# EXHIBIT B

 Gmail

Asad Gilani <asad.s.gilani@gmail.com>

## CoRe Contact Center Follow Up - Case 14282739 - [ ref:_00D40MxFD._500Do6UE4H:ref ]

"US Talent CIC Inbox" <ustalentcicinbox@deloitte.com> <ustalentcicinbox@deloitte.com>
To: "asad.s.gilani@gmail.com" <asad.s.gilani@gmail.com>

Wed, May 10, 2023 at 9:08 AM

Deloitte.



Case Number: 14282739

Hello Asad,

Thank you for contacting the CoRe Contact Center.

Per our conversation, your long term disability was termed on 5/12/23 and a personal leave of absence with no pay was entered on 5/1/23 to start on 5/15/23 by R. Hodges.

If you have questions, please contact the CoRe Contact Center at +1 800 DELOITTE (+1 800 335 6488) for assistance. Specialists are available Monday through Friday from 7:00 a.m. to 7:00 p.m. Central Time. You may also submit a non-urgent request by accessing the **"Have a question?"** dropdown via Talent on Demand. Please reference the Case Number above when calling.

Best regards,

Michelle
Specialist
CoRe Contact Center

About Deloitte
Deloitte refers to one or more of Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee ("DTTL"), its network of member firms, and their related entities. DTTL and each of its member firms are legally separate and independent entities. DTTL (also referred to as "Deloitte Global") does not provide services to clients. In the United States, Deloitte refers to one or more of the US member firms of DTTL, their related entities that operate using the "Deloitte" name in the United States and their respective affiliates. Certain services may not be available to attest clients under the rules and regulations of public accounting. Please see www._deloitte.com/about to learn more about our global network of member firms.

Copyright © 2023 Deloitte Development LLC. All rights reserved.

ref:_00D40MxFD._500Do6UE4H:ref