UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                            :
ASAD GILANI,                                    :

                            Plaintiff,         :

                                            :          23-CV-4755 (JMF)
            -v-                         :
                                           :          OPINION AND ORDER
DELOITTE LLP et al.,                      :

                        Defendants.      :
                                           :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Plaintiff Asad Gilani, a former employee of Deloitte Consulting LLP proceeding here without counsel, brings claims under various federal, state, and local laws against Deloitte LLP, Deloitte Consulting LLP, Deloitte USA LLP, Deloitte Services LP, and Deloitte Retirement Committee (collectively, "Deloitte" or "Deloitte Defendants"); as well as Richard Johnson, Mans Jabal, Navin Mudaliar, Meghan Kelly, and Lisa Bradley (collectively, "Individual Defendants"). Liberally construed, Gilani's operative Third Amended Complaint (the "Complaint") primarily alleges that he was subjected to discrimination, harassment, and retaliation because of age and disability. Defendants now move, pursuant to Rule 8(a)(2) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all of Gilani's claims. For the reasons that follow, Defendants' motion is GRANTED in part and DENIED in part.

## RULE 8(A)(2)

       At the outset, Defendants seek to dismiss the Complaint, ECF No. 102 ("TAC"), on the ground that it fails to comply with Rule 8. *See* ECF No. 113 ("Defs.' Mem."), at 6-8. Rule 8 provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It

requires "[e]ach allegation" to "be simple, concise, and direct," Fed. R. Civ. P. 8(d)(1), to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). Courts regularly dismiss complaints that fail to comply with this requirement, *see, e.g.*, *Keitel v. D'Agostino*, No. 21-CV-8537 (JMF), 2022 WL 15524665, at *2 (S.D.N.Y. Oct. 27, 2022), particularly if "the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised," *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

Defendants' Rule 8 arguments are not without force as the Complaint is indeed "convoluted, confusing, and difficult to comprehend," *Phipps v. City of New York*, No. 17-CV-6603 (ALC), 2019 WL 4274210, at *2 (S.D.N.Y. Sept. 10, 2019), and at times "unintelligible" and "indiscernible," *Strunk v. U.S. House of Representatives*, 68 Fed. App'x 233, 235 (2d Cir. 2003) (summary order). That said, bearing in mind that "[t]he fundamental command of the Federal Rules of Civil Procedure is never to exalt form over substance," and that there is a "jurisprudential preference for adjudication of cases on their merits rather than on the basis of formalities," courts recognize that "dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Ong v. Park Manor Rehab. & Healthcare Ctr.*, 51 F. Supp. 3d 319, 344-45 (S.D.N.Y. 2014) (citations omitted). Here, the Court can — albeit with some difficulty — discern the basic structure of Gilani's claims, the allegations underlying them, and some (but not all) of the factual background of his claims. This is not, therefore, the "most unsustainable of cases." *Id.* at 345. Accordingly, the Court denies Defendants' motion to dismiss on Rule 8 grounds and will consider whether Gilani plausibly states claims for relief.

**BACKGROUND**

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). In general, a court may not look outside the pleadings, documents attached thereto or incorporated by reference therein, and matters of which juridical notice may be taken when reviewing a 12(b)(6) motion to dismiss. But because a *pro se* plaintiff's allegations must be construed liberally, it is appropriate for a court to consider factual allegations made in such a plaintiff's opposition memorandum or affidavit, provided that the allegations are consistent with the complaint. *See, e.g.*, *Braxton v. Nichols*, No. 08-CV-8568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010); *see also Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering a *pro se* plaintiff's affidavit in opposition to a motion to dismiss in addition to those in the complaint). Accordingly, the following facts, which are accepted as true for purposes of this motion, are drawn from the Complaint as well as Gilani's memorandum of law and affidavit in opposition to the motion to dismiss to the extent they are consistent with the Complaint. ECF No. 120 ("Pl.'s Opp'n"); ECF No. 120-1 ("Gilani Decl.").[1]

Gilani began working for Deloitte as a Specialist Master/Manager on or about July 12, 2021, when he was sixty-five years old. TAC ¶ 32. The day Gilani started working, he met with

---

[1] Gilani filed two motions asking the Court to take judicial notice of various documents, including website screenshots, online articles, and documents from a judicial proceeding in Australia. *See* ECF Nos. 119, 121. Although the Court could arguably take notice of the *existence* of these materials, *see, e.g.*, *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006), Gilani fails to explain why they would be relevant for that purpose. Accordingly, the motions are denied. In any event, consideration of the documents would not affect the Court's analysis or its ultimate conclusions.

Jabal and Vengo, and Jabal — after discovering that Gilani had over forty-five years of experience — asked Gilani how old he was. *Id.* ¶ 41. After Gilani responded that he was sixty-five, Jabal responded: "Why are you still working? Do you want to get promoted to Senior Manager? Is that why you are working? Why do not you retire?" *Id.* Gilani spoke to Mudaliar, his assigned coach, about this incident, and also complained to Johnson. *Id.* ¶¶ 42-43. But Jabal "continue[d] to discriminate and harass Mr. Gilani because of his age, bullied, raise his voice on 8/2/21; 8/16/21, 8/26/21 12/10/21 and 12/13/21." *Id.* ¶ 40. At some point, Campbell coached Jabal on age discrimination and anti-harassment policies. *Id.* ¶ 58.

On October 20, 2021, Gilani, after arriving at a client's location in Arizona, notified Kocsi that he had a back condition, apparently a herniated disk, and furnished a doctor's note indicating that he was "disabled from 10/18/21 thru 11/1/21" and could "return to work with restrictions [no travel] from 11/1/21 . . . until seen by Neurosurgeon." *Id.* ¶¶ 62, 67. Kocsi said he would check with Johnson and get back to Gilani, but he never did, and Gilani was therefore forced to travel from New York to Arizona every week until December 4, 2021, when his condition deteriorated and he could hardly walk because of the pain. *Id.* ¶¶ 62-63. During this period of time, Gilani had been expected to work sixty to eighty hours each week, excluding weekly travel to and from Arizona. *Id.* ¶ 64.

Gilani saw a doctor again on December 13, 2021, and that same day reached out to the Deloitte Call Center to open a formal request because Kocsi had not yet provided him with an accommodation. *Id.* ¶ 71. The doctor indicated that Gilani was unable to lift over five pounds and could not travel by airplane. *Id.* Bradley contacted Gilani on December 17, 2021, acknowledging receipt of the accommodation request and requesting more information. *Id.* ¶ 73. On December 12, 2021, Gilani sent the requested form, completed by his physician, to Bradley.

4

*Id.* ¶ 75.  It indicated that Gilani had sciatica due to a herniated lumbar disc aggravated by activity and that he could not yet perform the essential functions of his position.  *Id.*  On January 3, 2022, Gilani was informed that he would not be able to work with an accommodation and thus would need to apply for Short Term Disability benefits.  *Id.* ¶ 76.  Nevertheless, confusingly, Gilani seems to allege that Bradley *did* provide a temporary no-travel accommodation in or around January 2022 but that, against his doctor's advice, he was forced to work sixty to eighty hours per week from January to May 2022.  *Id.* ¶¶ 79, 81.

Gilani alleges that his performance reviews were improperly lowered and that he was assigned failing projects in order to force him out.  *See, e.g.*, *id.* ¶¶ 82-96.  Gilani filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in October 2022, alleging age and disability discrimination.  *See* ECF No. 102-1, Ex. 1; ECF No. 120 ("Pl.'s Opp'n"), at 19-20.  While the circumstances around the end of Gilani's employment with Deloitte are not clear, he alleges that his benefits were terminated in May 2023 and that he was ultimately terminated on June 15, 2023, while he was out on disability.  TAC ¶¶ 98-102.  This lawsuit followed.

## LEGAL STANDARDS

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint.  In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See, e.g.*, *Holmes*, 568 F.3d at 335.  Thus, in order to survive a Rule 12(b)(6) motion against a defendant, a plaintiff must plead sufficient facts that, accepted as true, "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. A complaint that offers only "labels and conclusions" or "a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545. Further, if the plaintiff has not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570. When, as here, a plaintiff brings claims of employment discrimination or retaliation, however, the facts "alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination [or retaliation]. They need only give plausible support to a minimal inference of discriminatory [or retaliatory] motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

As noted, Gilani is proceeding without counsel. As a result, his submissions should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (stating that a court is "obligated to construe a *pro se* complaint liberally"). Nevertheless, *pro se* plaintiffs are not excused from the normal rules of pleading, and "dismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief." *Geldzahler v. New York Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (cleaned up). Indeed, the "duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Id.* (cleaned up); *see also, e.g.*, *Joyner v. Greiner*, 195 F. Supp. 2d 500, 503 (S.D.N.Y. 2002) (dismissing an action because the *pro se* plaintiff "failed to allege facts tending to establish" a violation of his constitutional rights).

**DISCUSSION**

Gilani's Complaint is far from a model of lucidity. Liberally construed, however, he brings claims for (1) age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107, *see* TAC ¶¶ 103-13; Pl.'s Opp'n 2-7, and aiding and abetting these violations of the NYSHRL and NYCHRL, *see* TAC ¶¶ 115-16; Pl.'s Opp'n 15-17; (2) disability discrimination and retaliation under the Americans with Disabilities Act ("ADA"), the NYSHRL, and the NYCHRL, *see* TAC ¶¶ 111-13, 119-36; Pl.'s Opp'n 11-15, and aiding and abetting these violations of the NYSHRL and NYCHRL, *see* TAC ¶¶ 115-16; Pl.'s Opp'n 15-17; and (3) claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, *see* TAC ¶¶ 137-39; Pl.'s Opp'n 17-18.[2]

The Court will address each set of claims in turn.

**A. Age Discrimination and Retaliation Claims**

The Court begins with Gilani's age discrimination and retaliation claims under the ADEA, the NYSHRL, and the NYCHRL. To survive a motion to dismiss the claims of discrimination under all of these laws, Gilani must provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311; *accord Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 173 (S.D.N.Y. 2011) (stating the same for claims under the NYCHRL). Although this threshold is "minimal," *Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 328 (S.D.N.Y. 2020) (internal quotation

---

[2] Although the Complaint also references Title VII of the Civil Rights Act of 1964, Gilani explicitly abandoned any such claim in his opposition. *See* ECF No. 126 ("Defs.' Reply"), at 7 n.9. Moreover, the Complaint contains no allegations that would support a Title VII claim.

marks omitted), Gilani fails to clear it as there is nothing in the Complaint that plausibly suggests discriminatory motivation. The only well-pleaded (that is, non-conclusory) allegation that touches on age discrimination is Gilani's interaction with Jabal on July 12, 2021, shortly after Gilani began his employment with Deloitte, when Jabal allegedly asked him why he was still working and why he did not retire. TAC ¶ 41. But such "stray remarks — particularly where, as here, those remarks . . . were not made by the relevant decisionmakers[] and were made well before the alleged adverse employment action — are not enough to create an inference of discrimination." *Smith v. Bronx Cmty. Coll. Ass'n*, No. 16-CV-3779 (JMF), 2017 WL 727546, at *2 (S.D.N.Y. Feb. 23, 2017). That would be enough to dispose of Gilani's age discrimination claims, but the fact that he was sixty-five years old when he was hired by Deloitte, *see* TAC ¶ 35, and that Deloitte "provided coaching to Mr. Jabal on the subject of age discrimination and harassment" when Gilani complained, *id.* ¶ 48, "further undermin[e] any possible inference of age discrimination relating to his termination." *Soto v. Marist Coll.*, No. 17-CV-7976 (KMK), 2019 WL 2371713, at *14 (S.D.N.Y. June 5, 2019) (holding as much where the plaintiff "was already a member of the age group protected by the ADEA when he was hired"); *Stofsky v. Pawling Cent. Sch. Dist.*, 635 F. Supp. 2d 272, 301 (S.D.N.Y. 2009) (concluding that the plaintiff could not support an inference of discrimination where, among other things, the defendant employer "took steps to accommodate [p]laintiff's concerns").

For similar reasons, Gilani also fails to state a claim for hostile work environment or disparate impact on the basis of age. "To 'state a claim for hostile work environment in violation of the ADEA, the plaintiff must plausibly allege that the workplace is 'permeated with discriminatory intimidation, ridicule and insult that it is sufficiently pervasive to alter the conditions of the victim's employment.'" *Zoulas v. New York City Dep't of Educ.*, 400 F. Supp.

8

3d 25, 59 (S.D.N.Y. 2019) (quoting *Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d 709, 722 (E.D.N.Y. 2015)).  Under the NYCHRL and the NYSHRL, "hostile conduct need not be severe or pervasive," *see, e.g.*, *Boonmalert v. City of New York*, 721 Fed. App'x 29, 34 (2d Cir. 2018) (summary order) (NYCHRL); *Charles v. City of New York*, No. 21-CV-5567 (JPC), 2023 WL 2752123, at *8 (S.D.N.Y. Mar. 31, 2023) (NYSHRL), but a plaintiff "must still allege that his age was the motivating factor behind any workplace hostility," *Boonmalert*, 721 Fed. App'x at 34.  Gilani's interactions with Jabal are not enough to meet even the more permissive NYCHRL standard.  They are thus plainly inadequate to satisfy the ADEA and NYSHRL as well.  Meanwhile, "[t]o survive a motion to dismiss, a disparate impact claim must identify a specific employment practice that causes a disparate impact." *Clarke v. Leading Hotels of the World, Ltd.*, No. 15-CV-008 (JMF), 2015 WL 6686568, at *3 (S.D.N.Y. Oct. 29, 2015).  As Defendants explain, Gilani identifies neither a specific practice nor any disparate impact on a protected group.  *See* Defs.' Reply 8-9.

Finally, Gilani fails to state a claim for age-related retaliation as well.  "To establish a prima facie case of retaliation under the ADEA, NYSHRL, and NYCHRL, a Plaintiff must show: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Lebowitz v. New York City Dep't of Educ.*, 407 F. Supp. 3d 158, 176-77 (E.D.N.Y. 2017) (internal quotation marks omitted).  "[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd.*

*of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). The Complaint, however, includes no allegations of retaliatory animus or disparate treatment. And without such evidence, the gap of seven or more months between Gilani's EEOC complaint in October 2022 and his termination in May or June 2023 is too great to support a finding of causation. *See, e.g.*, *Johnson v. City of New York*, No. 23-CV-5378 (JMF), 2024 WL 3520474, at *7 (S.D.N.Y. July 24, 2024) (finding a four-month gap insufficient and citing cases).

Accordingly, all of Gilani's age-related claims must be and are dismissed. It follows that his aiding-and-abetting claims against the Individual Defendants under the NYSHRL and NYCHRL are also dismissed insofar as they relate to age. *See, e.g.*, *White v. Pacifica Found.*, 973 F. Supp. 2d 363, 377-78 (S.D.N.Y. 2013) (observing that a primary violation of the NYSHRL and the NYCHRL are necessary to support aiding-and-abetting liability).

**B. Disability Discrimination and Retaliation Claims**

By contrast, the Court concludes that Gilani's claims under the ADA, NYSHRL, and NYCHRL for disability discrimination and retaliation, and his related aiding-and-abetting claims against the Individual Defendants under the NYSHRL and the NYCHRL, survive.

"Disability discrimination claims under the ADA 'may be brought under a theory of adverse employment action or of failure to provide reasonable accommodation.'" *Samuels v. City of New York*, No. 22-CV-1904 (JGK), 2023 WL 5717892, at *6 (S.D.N.Y. Sept. 5, 2023) (quoting *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020)). Liberally construed, the Complaint here alleges both theories. First, the failure-to-accommodate theory requires a plaintiff to allege that: "(1) the plaintiff 'is a person with a disability' as defined in the [relevant statute]; (2) 'an employer covered by the statute had notice of [the] disability'; (3) 'with reasonable accommodation, [the] plaintiff could perform the

essential functions of the job at issue'; and (4) the covered employer 'refused to make such accommodations.'" *Id.* (quoting *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006)). Although the details here are not entirely clear, Gilani alleges that he requested an accommodation from his employers, accompanied by a doctor's note, on or about October 20, 2021, and that, after telling Gilani they would check with Johnson and follow up, they never did. TAC ¶¶ 62-64. He further alleges that because Deloitte failed to engage in an interactive process to consider his accommodation request, his back condition deteriorated and his disability was exacerbated and extended. *Id.* ¶ 70. And finally, he alleges that he continued to request accommodations and that his requests were never properly considered or granted. *See, e.g.*, *id.* ¶¶ 71-81. At this stage, and mindful of Gilani's *pro se* status, that is enough to plausibly allege a failure to accommodate under the ADA. *A fortiori*, it is sufficient to state a claim under the NYSHRL and NYCHRL too. *See, e.g.*, *Dinome v. Cordis US Corp.*, No. 23-CV-11173 (ER), 2024 WL 3888799, at *8-9 (S.D.N.Y. Aug. 21, 2024) (observing that "[c]ourts apply the same standard for failure to accommodate cases under the ADA, NYSHRL, and NYCHRL," but that the NYSHRL and NYCHRL "use 'a broader definition of disability than does the ADA'").[3]

---

[3] Defendants argue that Gilani's failure-to-accommodate claims should be dismissed because he admitted in an earlier complaint "that 'Deloitte' provided him an accommodation in January 2022," Defs.' Mem. 10, and because he admits "that he is unable to perform the essential job functions" of his position, *id.* at 17-18. But the latter assertion is drawn from a doctor's note dated December 21, 2021, *see* ECF No. 107-2 (Ex. 9), and the former relates to an accommodation that was supposedly granted the following month. Accordingly, neither defeats Gilani's allegations that his earlier October 20, 2021 request for an accommodation went ignored. *See* TAC ¶¶ 62-64. That is all the more true because the October 2021 request was accompanied by a doctor's note indicating that Gilani *could* return to work, albeit with restrictions on lifting and travel, *see* ECF No. 107-1 (Ex. 6), and Gilani claims that Defendants' failure to timely accommodate that request caused his condition to deteriorate, perhaps to a point where he could no longer perform essential job functions, *see* TAC ¶ 70; Pl.'s Opp'n 13-14.

11

Second, to plead a claim under an adverse employment action theory under the ADA, a plaintiff must allege that "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Baluch v. 300 W. 22 Realty, LLC*, No. 21-CV-9747 (JPO), 2023 WL 112547, at *3 (S.D.N.Y. Jan. 5, 2023) (quoting *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 234-35 (2d Cir. 2015)).  Here, Gilani alleges that Deloitte took various adverse actions against him because of his disability, from assigning him failing projects, to artificially manipulating his performance reviews to his detriment (including to deny him raises and bonuses), to ultimately terminating his employment while he was on disability. *See, e.g.*, TAC ¶¶ 24, 33, 82, 87-102, 127.  These allegations are enough to meet Gilani's "minimal" burden at this stage. *See Dooley v. JetBlue Airways Corp.*, 636 Fed. App'x 16, 21 (2d Cir. 2015) (summary order).  They are also sufficient to "nudge[] . . . across the line from conceivable to plausible" his disability-related retaliation claims.  *Twombly*, 550 U.S. at 570; *see Samuels*, 2023 WL 5717892, at *11 (providing that an ADA plaintiff "must establish that (1) the plaintiff participated in a 'protected activity' under the statute at issue . . . ; (2) 'the defendant knew of the protected activity'; (3) the defendant subjected the plaintiff to an 'adverse' action; and (4) a 'causal connection' existed 'between the protected activity' and the adverse action").  Once again, it follows that Gilani's parallel claims under the NYSHRL and the NYCHRL may proceed.  *See Baluch*, 2023 WL 112547, at *5.

Defendants invite the Court, at a minimum, to dismiss these claims against "Defendants Deloitte LLP, Deloitte USA LLP, and Deloitte Services LP" because only "Deloitte Consulting

12

LLP is Plaintiff's employer." Defs.' Mem. 23-24. But "[t]he determination of whether a parent and a subsidiary may be treated as a single employer is ordinarily a question of fact inappropriate for resolution at this stage of the litigation." *Morrow v. Metro. Transit Auth.*, No. 08-CV-6123 (DLC), 2009 WL 1286208, at *9 (S.D.N.Y. May 8, 2009). And there are good reasons here to defer that determination to later. Although the Complaint is less than pellucid as to the relationship among the various Deloitte Defendant entities, Gilani's pleadings and attached materials point to connections that may support treating them as an integrated enterprise. For example, Gilani's right-to-sue letter copies Susan Pugatch and Saima Sheikh at Deloitte LLP, ECF No. 102-1, Ex. 2, and Gilani alleges that Pugatch and Sheikh "work[] in Deloitte USA LLP Legal support," TAC ¶¶ 8, 10. In addition, Gilani alleges that Defendants Bradley and Kelly "work in Deloitte Services LP." *Id.* ¶¶ 8-10. "[A]t this early stage in the litigation, and remaining mindful of Plaintiff's *pro se* status, the Court finds that the[se] facts . . . are adequate to suggest that Plaintiff had an employment relationship with this integrated enterprise." *Karupaiyan v. CVS Health Corp.*, No. 19-CV-8814 (KPF), 2021 WL 4341132, at *9-10 (S.D.N.Y. Sept. 23, 2021). Accordingly, the Court declines Defendants' invitation.

Finally, although the issue is close, the Court concludes that Gilani's aiding-and-abetting claims under the NYSHRL and NYCHRL with respect to disability discrimination and retaliation also pass muster. Under both laws, an employee may be held liable for aiding and abetting a discriminatory or retaliatory act if he or she "actually participates in the conduct giving rise to a discrimination [or retaliation] claim." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995) (NYSHRL); *see also Feingold v. New York*, 366 F.3d 138, 158-59 (2d Cir. 2004) (NYCHRL). With respect to the disability discrimination and retaliation claims that Gilani plausibly alleges, he sets forth allegations that are sufficient (though perhaps just barely) to

plausibly establish that Johnson, Mudaliar, Kelly, and Bradley actively participated in the alleged violations. *See, e.g.*, TAC ¶¶ 7, 30, 31, 62, 73, 74, 77, 78, 79, 82, 84, 85.  Accordingly, Gilani's aiding-and-abetting claims against these Individual Defendants may continue insofar as they pertain to the claims of disability discrimination and retaliation.

**C.  ERISA**

Gilani's final claim — under ERISA — is also easily dismissed.  The Complaint alleges only that "Deloitte GroupPlan ceased Mr. Gilani's benefits on May 31, 2023 and violated [ERISA]," "Deloitte Pension Plan ceased Mr. Gilani Service Benefi[t]s and violated ERISA," and "Deloite 401KPlan ceased [Mr.] Gilani's benefits in 2021 and [violated] ERISA."  TAC ¶¶ 99-101.  It does not even specify the nature of the alleged violation.  And Gilani's opposition materials do no better, merely repeating the allegations in the Complaint.  *See* Pl.'s Opp'n 17-18.  To the extent that the Complaint can be liberally construed to allege that Gilani "was wrongfully terminated in order to prevent him from attaining a benefit to which he would otherwise be entitled," *Jiggetts v. United Parcel Serv.*, No. 14-CV-8291 (AJN), 2017 WL 1164698, at *7 (S.D.N.Y. Mar. 27, 2017) (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143 (1990)), it falls well short of stating a claim because Gilani does not allege that he was terminated "*in order* to prevent [benefits] from vesting," *id.*  "Although the *effect* of a wrongful termination on the basis of a protected characteristic . . . may be that certain pension benefits do not vest, such termination does not state a claim under ERISA unless it is motivated by a desire to unlawfully prevent those benefits from vesting."  *Id.* (citing *Sandberg v. KPMG Peat Marwick, L.L.P.*, 111 F.3d 331, 335 (2d Cir. 1997)).  Accordingly, Gilani's ERISA claim must be and is dismissed.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Specifically, Gilani's claims for disability discrimination and retaliation under the ADA, NYSHRL, and NYCHRL, and for aiding and abetting these alleged violations of the NYSHRL and NYCHRL, survive. All other claims — including all claims against Jabal — are dismissed.

With respect to these dismissed claims, the Court denies Gilani leave to further amend. Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (internal quotation marks omitted). Here, the problems with Gilani's dismissed claims are largely substantive, so amendment would likely be futile. *See, e.g.*, *Roundtree v. NYC*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (collecting cases). Moreover, Gilani does not suggest that he is in possession of facts that would cure the problems with any of his dismissed claims. *See, e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014) ("A plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint."); *accord TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505-06 (2d Cir. 2014). Finally, and most significantly, the Court granted Gilani leave to amend three times already, *see* ECF Nos. 62, 86, 101, and explicitly warned Gilani that he "will not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss," ECF No. 101. Accordingly, the Court denies leave to amend the Complaint for a fourth time.

Unless and until the Court orders otherwise, Defendants shall file their Answer to the remaining claims within **two weeks** of the date of this Memorandum Opinion and Order. *See* Fed. R. Civ. P. 12(a)(4)(A). By separate orders, the Court will (1) refer this case to the Court-annexed mediation program for settlement purposes and (2) refer this case to Magistrate Judge Gary Stein for General Pretrial purposes.

The Clerk of Court is directed to terminate ECF Nos. 112, 119, and 121 and to terminate Mans Jabal as a Defendant.

SO ORDERED.

Dated: September 4, 2024
      New York, New York

                                                 JESSE M. FURMAN
                                          United States District Judge